739 P.2d 258

Frances A. McBRIDE (Yockey),
Plaintiff-Appellant,

v.

Lawrence C. McBRIDE,
Defendant-Respondent.

No. 16369.

Supreme Court of Idaho.

Jan. 7, 1987.

On Rehearing June 30, 1987.

Jay P. Gaskill, Randall, Blake, Cox, Risley & Trout, Lewiston, for plaintiff-appellant.

Roy E. Mosman, Moscow, for defendant-respondent.

SHEPARD, Chief Justice.

This is an appeal from an order of the district court denying plaintiff-appellant Yockey's motion to modify and vacate a portion of a divorce decree. We affirm.

The facts are not in controversy and it is only the conclusions that flow therefrom which require examination. Defendant-respondent Lawrence McBride entered the United States Navy in July 1956, and served therein until he retired on July 1, 1983, at the rank of Lt. Commander with 27 years of service. The parties hereto were married in August 1964, and remained married for approximately 18 years. No children were born the issue of

that marriage. At some time prior to October 31, 1982, disputes and irreconcilable differences arose between the parties, and they began living separate and apart.

On October 31, 1982, the parties entered into a property settlement and separation agreement. Therein it is recited that the wife has had the advice of legal counsel who drafted the agreement, and that the husband had been advised to seek the advice of counsel.

In that agreement the parties agreed to (1) division of personal property and (2) division of real property. Therein was awarded to the wife motor vehicles, checking accounts, life insurance policies, a credit union account, jewelry, and personal property "now in possession of wife." Awarded to the husband were motor vehicles subject to indebtedness, checking accounts, credit union accounts, jewelry, personal property now in possession of husband, and "all interest in husband's United States government pension fund." Additionally, each party was awarded life insurance policies. The husband was awarded, subject to existing indebtedness, certain real property.

In the said agreement no values are ascribed to any of the property, either real or personal. However, it appears that the parties intended an equal division of their property since the wife was also awarded "the sum of $48,154.00 to make an even division of the community assets...." Fifteen thousand dollars of that sum was to be paid within one year of the date of the agreement, and the balance thereof was to be paid at the rate of approximately five thousand dollars per year together with interest at ten percent per annum. If prepayment was made during that period of time a sliding scale prepayment penalty was established. The husband was required to secure the payment of those sums by executing in favor of the wife a mortgage on the real property awarded to the husband. The husband was also required to assume all of the then named existing indebtedness, however the amount thereof was not specified. On November 1, 1982, plaintiff-appellant wife filed an action for divorce in which she prayed for a divorce on the basis of irreconcilable differences and prayed "that the court approve, ratify and confirm the property settlement and separation agreement attached to this complaint." The property settlement agreement was the agreement entered into by the parties on October 31, 1982.

Service of process was made upon the defendant husband who failed to appear, and a default was entered against him. On November 22 a hearing was held upon the complaint of the wife, and on that same day findings of fact, conclusions of law and decree of divorce were entered. In those findings the court stated:

> That the parties hereto have acquired various items of community property during said marriage; that the same has been divided between the parties hereto pursuant to a property settlement and separation agreement made and entered into on the 31st day of October 1982; that said property settlement and separation agreement dividing said real and personal property and containing other agreements between the parties to this action makes a division which is fair and equitable to each of the parties hereto; and that attached to the complaint filed in this action is an executed original of said agreement between the parties hereto.

A copy of the agreement was attached to the decree, and the decree recited that the agreement was ratified, approved, and confirmed by the court.

On March 26, 1985, plaintiff-appellant filed her petition to modify and vacate that portion of the divorce decree dealing with the husband's military retirement pay, and to grant plaintiff-appellant a one-half interest in all accrued and future benefits. The basis of Yockey's contention is the enactment by Congress of the Uniformed Services Former Spouses' Protection Act (USFS-PA) on September 8, 1982.

In *Ramsey v. Ramsey*, 96 Idaho 672, 535 P.2d 53 (1975), this Court held that military retirement benefits that the husband earned during the marriage constituted community property of the parties subject

to distribution in a divorce action. In June 1981 the United States Supreme Court held that military retirement benefits are not subject to division as community property by a state court in a divorce action. *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). In response to *McCarty* the Congress, in 1982, enacted the Uniformed Services Former Spouses' Protection Act, P.L. 97–252 (1982) (codified as amended at 10 U.S.C.A. § 1408). That Act was signed by the president on September 8, 1982. While that Act carried an effective date of February 1, 1983, both parties concede that the intent of the Act was retroactive to June 25, 1981 (the date of the *McCarty* decision), and was intended to overrule *McCarty*.

■ In the absence of an appeal from an original decree of divorce the property division portions of that decree are final, *res judicata*, and no jurisdiction exists to modify property provisions of a divorce decree. *Sullivan v. Sullivan*, 102 Idaho 737, 639 P.2d 435 (1981); *Paul v. Paul*, 97 Idaho 889, 556 P.2d 365 (1976); *Lowe v. Lowe*, 92 Idaho 208, 440 P.2d 141 (1968). That rule has been modified in circumstances demonstrating fraud, coercion, or overreaching, but no such circumstances are alleged or demonstrated here.

■ Other provisions of divorce decrees may be subject to modification, *i.e.*, the custody, support, and maintenance of minor children of parties, or alimony. In the instant case there were no minor children of the parties, and each of the parties in the settlement agreement waived any claim to spousal support. On the part of the wife such waiver undoubtedly resulted from her intent to immediately remarry, and she did in fact remarry two days after the divorce decree. Hence, the Court is not requested, nor required, to consider the doctrines of integration or merger in modification of child support or alimony provisions of the divorce decree as considered by the Court in *Phillips v. Phillips*, 93 Idaho 384, 462 P.2d 49 (1969), and the decisions discussed therein.

■ Hence, it is essentially conceded by appellant Yockey that her relief, if any, is confined to relief under I.R.C.P. 60(b)(4) or 60(b)(5).[1] Relief may be granted under I.R.C.P. 60(b)(4) only on the basis that the judgment is void. For obvious reasons Yockey does not claim that the entire decree of divorce is void, but merely that part which awards husband the military retirement benefits is void.

In *Nieman v. Nieman*, 105 Idaho 796, 673 P.2d 396 (1983), the appellant claimed relief under I.R.C.P. 60(b)(4) from a judgment awarding an ex-wife military retirement benefits. It was there contended that the Supreme Court's decision in *McCarty v. McCarty, supra*, had rendered this Court's decision in *Ramsey v. Ramsey, supra*, erroneous, and hence the judgment awarding

1. **Rule 60(b). Mistakes, inadvertence, excusable neglect, newly discovered evidence, fraud, grounds for relief from judgment on order.—** On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The mo-

tion shall be made within a reasonable time, and for reasons (1), (2), (3) and (6) not more than six (6) months after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. Such motion does not require leave from the Supreme Court, or the district court, as the case may be, as though the judgment has been affirmed or settled upon appeal to that court. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to set aside, as provided by law, within one (1) year after judgment was entered, a judgment obtained against a party who was not personally served with summons and complaint either in the state of Idaho, or in any other jurisdiction, and who has failed to appear in said action, or to set aside a judgment for fraud upon the court.

military retirement benefits in *Nieman* was "void."

The Court in *Nieman* held that the decree dividing the military retirement benefits was a final judgment, to be given *res judicata* effect, and that "a judgment is not void and therefore not within the ambit of 60(b)(4) simply because it is erroneous, or is based upon precedent which is later deemed incorrect or unconstitutional." Here there is no showing that the court below lacked jurisdiction in either subject matter or *in personam*, or that the decree granted relief which was not within the power of the court. Indeed, here it was Yockey herself who instituted the action and sought the jurisdiction of the court. It was Yockey who tendered the settlement agreement to the court, asking the court to ratify and confirm the terms of such agreement. That agreement specifically set forth the property interest in the military retirement benefits, and awarded them to the husband. In her prayer for relief, Yockey requested the court to divide the property in accordance with the settlement agreement. Since the record demonstrates that the respondent husband defaulted and did not appear, the specific finding of the trial court that the agreement was fair and equitable could only have been based upon the testimony and assertion of the appellant wife at the hearing. We find no error in the trial court's refusal to modify the decree under the provisions of I.R.C.P. 60(b)(4).

■ Yockey also asserts that the trial court erred in denying her relief under I.R.C.P. 60(b)(5). Under that portion of the rule Yockey must show that the judgment is prospective in nature *and* that it is no longer equitable to enforce the judgment as written. *Rudd v. Rudd,* 105 Idaho 112,

666 P.2d 639 (1983). Here, the judgment was not prospective. It adjudicated all the rights as between the parties as of the date of the judgment. Each party was awarded various portions of the property and there is no showing but that each party has gone into and remained in possession of those elements of property. Yockey was awarded a money judgment payable at certain times, together with interest thereon, and those monies were secured by a mortgage in favor of Yockey covering the real property of respondent. There is no contention that respondent has failed to execute the mortgage, nor that respondent has failed or refused to pay the monies.

Further, we hold that Yockey has made no showing that it is no longer equitable to enforce the judgment, and therefore it should be modified. The record before us indicates only that the parties entered into a voluntary settlement relating to the property division. As noted, the recitation of the property to be divided included the military retirement benefits. No value was placed upon the military retirement benefits, nor on any of the other property items.[2] Yockey secured legal counsel and had the advice of that counsel. The agreement was prepared by her legal counsel who advised her against such a property division because of the award of the retirement benefits to the husband. She chose not to accept that advice because, as she admitted, she desired the proceedings concluded as quickly as possible so she could remarry. The record demonstrates no inequity in the trial court's refusal to modify the divorce decree.

We further note, as indicated above, that Yockey filed the action. Respondent husband did not appear and default was taken against him. Respondent husband did not

**2.** In her brief, Yockey attempts to demonstrate through deposition testimony taken in August 1985, that the results of the settlement agreement are inequitable. We disagree. We note that therein the parties disputed the values of property items, disputed the amounts of indebtedness assumed by the husband, failed to indicate amounts of cash, failed to place values on insurance, and disputed the purpose of the $48,-000.00 to Yockey. Yockey asserted that the $48,000.00 award was based solely on the value of the real property awarded to husband, but husband asserts the $48,000.00 award to Yockey was based in part on value of the real property and part on the discounted value of the military retirement benefits as calculated by Yockey's attorney. The testimony of both parties is not in dispute that Yockey was aware of the Congressional enactment and the agreement was negotiated over a considerable period of time at five or six meetings between the then husband and Yockey and her attorney.

appear at the hearing either in person or by counsel. Yockey's complaint contained the settlement agreement, and the prayer in the complaint requested the court to divide the property set out therein in accordance with the terms of the agreement. No jurisdiction was conferred upon the court to enter a decree awarding Yockey any relief beyond that prayed for in her complaint. I.R.C.P. 54(c); *Jensen v. Jensen*, 97 Idaho 922, 557 P.2d 200 (1976); *Hayes v. Towles*, 95 Idaho 208, 506 P.2d 105 (1973). It would be a strange type of equity to allow a plaintiff on a default proceeding to obtain the relief which she demands from the court, *i.e.* a divorce on grounds of irreconcilable differences and the award to her of certain items of property, to all of which the husband may agree and therefore offer no contest, and at a later time when the husband is foreclosed from contesting any other portion of the decree demand that one particular portion of the decree be modified. Yockey voluntarily entered into the agreement, voluntarily sought the divorce, voluntarily prayed for certain relief, and obtained precisely that relief from the court. Under such circumstances it is difficult to comprehend that the court now possesses jurisdiction to grant relief which it did not have jurisdiction to grant in the original proceeding. To hold under the instant circumstances that there is a lack of equity would only operate to destroy the finality of judgments.

Order of the district judge affirmed; costs to respondent.

DONALDSON, BAKES and BISTLINE, JJ. concur.

HUNTLEY, Justice, dissenting.

Mr. McBride has total retirement benefits valued at $432,000, 68% of which are community property and the wife's one-half thereof being $142,355.

There is ample, respectable, and well-reasoned authority for a method of interpreting Idaho statutes and rules of civil procedure in a manner which would prevent the wife from being deprived of that to which she is entitled, but for some reason the majority is not open to the analysis.

In *Ramsey v. Ramsey*, 96 Idaho 672, 535 P.2d 53 (1975) we held military retirement pay to be community property to the extent such benefits vested or accrued while the husband and wife were domiciled in a community property state.

In the summer of 1981, the U.S. Supreme Court decided *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). *McCarty* held that, under federal law, military retirement payments could not be characterized as community property and considered in community property divisions upon divorce. Subsequent to *McCarty*, this Court "reluctantly" complied with the *McCarty* holding. *Rice v. Rice*, 103 Idaho 85, 645 P.2d 319 (1982).

The parties in the instant case entered into a property settlement agreement on October 31, 1982, in which Frances McBride was not to receive any interest in her husband's military retirement benefits. This property agreement was subsequently "incorporated, merged and ordered" into a divorce decree. In deposition testimony, Mrs. McBride stated her frame of mind in agreeing to a property settlement agreement wherein she took no interest in her husband's military retirement benefits:

> It was my understanding at that time that I could not—the current court ruling and the current law stated that I could not try to get to a portion of his retirement as community property, and that was what I believed to be the case at that point in time.... I made a decision at that time that I couldn't do anything else, the law wouldn't let me.

On February 1, 1983, three months after Frances McBride signed the property settlement agreement, the Uniformed Services Former Spouses' Protection Act (USFSPA), P.L. 97–252 (10 U.S.C. § 1408, enacted September 8, 1982), took effect. The USFSPA granted trial courts the discretion to include a division of military retirement benefits into final dissolution decrees, should applicable state law so allow. There is no doubt but that the USFSPA was enacted in response to *McCarty;* a portion of that Act reads:

Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981 [the date of the McCarty decision], either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court. 10 U.S.C. § 1408(c)(1).

Moreover, the legislative history available for the USFSPA shows that the act not only effectively did away with the *McCarty* decision, but also was intended to apply retroactively to protect those spouses of uniformed servicemen who were divorced during the twenty-month effective period of *McCarty:*

> The purpose of this provision is to place the courts in the same position that they were in on June 26, 1981, the date of the McCarty decision, with respect to treatment of non-disability military retired or retainer pay. The provision is intended to remove the federal preemption found to exist by the United States Supreme Court and permit state and other courts of competent jurisdiction to apply pertinent state or other laws in determining whether military retired or retainer pay should be divisible. Nothing in this provision requires any division; it leaves that issue up to the court supplying community property, equitable distribution or other principles of marital property determination and distribution. *This power is returned to the court retroactive to June 26, 1981.* This retroactive application will at least afford individuals who were divorced (or had decrees modified) during the interim period between June 26, 1981 *and the effective date of this legislation* the opportunity to return to the courts to take advantage of this provision. Senate Report S.Rep. No. 502, 97th Congress, 2nd Session 16, reprinted in 1982 U.S.Code Cong. & Ad. News 1596, 1611. (Emphasis added).

In short, the USFSPA as enacted solely to ameliorate the effects of the McCarty decision and to give back to the states the opportunity to decide the extent to which military retirement benefits could be considered in dissolution proceedings.

Idaho took the opportunity provided by the USFSPA to reinstate the *Ramsey* decision in *Griggs v. Griggs,* 107 Idaho 123, 686 P.2d 68 (1984). However, until this case, this Court has not yet had to address the issue of whether those spouses of Uniformed Services Employees obtaining dissolutions during the twenty-month effective period of the *McCarty* holding might reopen dissolution judgments to allow for consideration of military retirement benefits as community assets. We should hold that Mrs. McBride may have her dissolution decree modified and vacated to include an assessment of her husband's military retirement benefits as community property in accordance with *Griggs, supra.* In so holding, we would be relying upon the obvious intent of Congress in passing the USFSPA and the fact that Mrs. McBride is, under the pertinent legislative history, a member of the class Congress sought to aid in allowing for retroactivity, but also upon the availability, in Idaho, of the procedural mechanism found in I.R.C.P. Rule 60(b), subsections (4) and (5).[1]

We could also look specifically to the analysis contained in cases decided in other states. In *Flannagan v. Flannagan,* 42 Wash.App. 214, 709 P.2d 1247 (1985), the court recognized the uniqueness of this situation in allowing for reexamination of final decrees in light of the USFSPA, despite the importance of the finality of judgments doctrine:

> While we recognize the importance of finality of judgments, some situations justify an exception to this "doctrine of finality." We hold that the circumstances presented in these cases are sufficiently extraordinary to permit the use of a C.R. 60(b)(11) [a procedural mechanism analogous to portions of I.R.C.P. Rule 60(b), and Federal Rule of Civil Proce-

---

1. I do not address the applicability of the other subsections of I.R.C.P. 60(b) in the instant case, since subsections (1), (2), (3) and (6) all man-

date that the motion for relief be made within six months of judgment. Mrs. McBride did not meet that timetable.

dure 60.] motion to reexamine the final decrees in light of the USFSPA.

That court relied upon the well defined congressional intent "that the USFSPA apply retroactively *to eliminate all effects* of the *McCarty* decision...." (709 P.2d at 1250, quoting from *In re Marriage of Konzen*, 103 Wash.2d 470, 693 P.2d 97 (cert. denied, 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985) (emphasis added)). Additionally, the court relied heavily upon the "extraordinary circumstances" present in cases where reopening of a divorce decree was finalized during the twenty-month effective period of *McCarty:*

> We agree that the *McCarty* period cases present "extraordinary circumstances." Those circumstances are as follows; First, the clear congressional desire of removing all ill effects of *McCarty*, second, the alacrity with which the Congress moved in passing the USFSPA; third, the anomaly of allowing division of military retirement pay before *McCarty* and after USFSPA, but not during the twenty-month period in between; and fourth, the limited number of decrees that were final and not appealed during that period. 709 P.2d at 1252.

The court emphasized that, in light of the extraordinary circumstances detailed, "[a]llowing reopening in these cases will not provide a springboard for attacks on other final judgments." 709 P.2d at 1252.

I find the reasoning contained in *Flannagan* persuasive. That case correctly details the limited nature and effect of such a holding in the instant case. The uniqueness of the situation and paucity of possible claimants for reopening on such grounds in Idaho compels me to agree that allowing reopening in this case will not lead to the haphazard dismemberment of the doctrine of finality.

The trial court in the instant case emphasized *Allison v. Allison*, 690 S.W.2d 340 (Tex.App.1985); wherein the claimant was denied relief from a final judgment in the analogous situation where the claimant wished to reopen the judgment in light of the USFSPA. However, in so doing, the *Allison* court relied upon the fact that the Texas Rules of Civil Procedure did not provide for relief from final judgments in a manner similar to federal rule 60 (which is analogous to I.R.C.P. Rule 60(b)).

> [T]he federal statute (USFSPA) ... cannot create the procedural mechanism to reopen final state court judgments. The law of the courts of *this state* does not have an equivalent of Federal Rule 60. 690 S.W.2d at 345. (See also discussion of *Allison, supra,* in *Flannagan, supra,* 709 P.2d at 1251).

Most states which have both a procedural mechanism for the reopening of final judgments and have considered the retroactive application of the USFSPA to final decrees have allowed reopening. *Thorpe v. Thorpe*, 123 Wis.2d 424, 367 N.W.2d 233 (Ct.App.1985); *Koppenhaver v. Koppenhaver*, 101 N.M. 105, 678 P.2d 1180 (Ct. App.1984); *Castiglioni v. Castiglioni*, 192 N.J.Super. 594, 471 A.2d 809 (1984); *Edsall v. Superior Court*, 143 Ariz. 240, 693 P.2d 895 (1984).

REOPENING UNDER I.R.C.P. 60(b)(4).

The majority relies upon *Nieman v. Nieman*, 105 Idaho 796, 673 P.2d 396 (1983), where we refused to allow a husband's motion to reopen a divorce decree wherein his military retirement pay was treated as community property, in light of the then controlling *McCarty* decision, on grounds that "a judgment is not void and therefore not within the ambit of 60(b)(4) simply because it is erroneous, or is based upon precedent which is later deemed incorrect or unconstitutional." 105 Idaho at 797, 673 P.2d at 396. In *Nieman*, we reemphasized this Court's continued affirmation of the doctrine of finality of judgments. I view *Nieman* as distinguishable. In *Nieman*, we were not presented with clear Congressional intent in favor of retroactive application of a new rule of law; nor were we presented with a situation where only a few claimants might petition for reopening. In short, none of the "extraordinary circumstances" detailed in *Flannagan* (i.e. congressional intent, the speed with which congress enacted the USFSPA, the anomaly of not allowing for the division of military retirement pay in only a twenty-month

period, and the limited number of decrees which became final during that twenty-month period were present). As already stated, the factual scenario of this case is so extraordinary and so compelling that, in this instance, it justifies a limited exception to the doctrine of finality of judgments.

The majority asserts that allowing reopening in the instant case will distort the doctrines of finality and res judicata. I disagree. I have already addressed the issue of finality, and beyond that, other courts have persuasively noted the inapplicability of the doctrine of res judicata in analogous cases.

> For the doctrine of res judicata to apply, the issues must have been, or reasonably could have been, decided in the prior action. (citation omitted). [T]he issue of dividing the retirement payments could not have been decided because of *McCarty*. Res judicata does not prevent reopening the decrees. (citation omitted). *Flannagan*, 709 P.2d at 1253.

*Flannagan* also cited to *Trahan v. Trahan*, 682 S.W.2d 332 (Tex.App.1984), wherein it was held that res judicata did not apply when it would "subvert the intent of congress and the plain meaning of the act (USFSPA) which is to restore state law to what it was prior to the *McCarty* decision." 682 S.W.2d at 337. Here, a significant community asset—the military retirement pension—was *never* before the court as a community asset. Res judicata simply does not apply.

Due to the compelling and limited nature of the instant case, I would allow for reopening under I.R.C.P. 60(b)(4) despite the absence of jurisdictional defect normally required for such relief. (*See, Catledge v. Transport Tire Co.*, 107 Idaho 602, 691 P.2d 1217 (1984).)

## REOPENING UNDER I.R.C.P. 60(b)(5)

I.R.C.P. 60(b)(5) allows for relief from judgment where "it is no longer equitable that the judgment have prospective application."

The majority's assertion that "the specific finding of the trial court that the agree-ment was fair and equitable could only have been based upon the testimony and assertion of the appellant wife at the hearing," since Mr. McBride defaulted and did not appear, is irrelevant. Congress, by speedily enacting the USFSPA and providing for its retroactivity has indicated that the continued application of *McCarty* is *not* equitable in states where military retirement benefits are now considered community assets to the extent accrued during marriage while domiciled in a community property state. The voluntariness with which Mrs. McBride entered into the agreement, upon which Justice Shepard so heavily relies, cannot be deemed meaningful in the absence of knowledge of both the USFSPA and its retroactivity:

> The question as to whether retroactive application of the act (USFSPA) could produce substantial inequitable results is the easiest answer the non-application of the act would produce inequitable results. Not to apply the act retroactive to June 25, 1981, would yield far more problems than would any mechanical application of a calendar determining set of laws. To allow cases decided, but not yet final, either before or during the relatively short interval of *McCarty* to be subject to the *McCarty* rule would carve out of the many persons entitled to military pensions a fortunate or unfortunate few who had substantial rights determined by the vagaries of the calendar. It would create a gap of some twenty months in which their future entitlements were or were not to be determined in a manner different from the forty years before or indefinite future after. *In re Marriage of Hopkins*, 142 Cal. App.3d 350, 359–60, 191 Cal.Rptr. 70, 77 (1983).

As to whether the divorce decree in the instant case operates prospectively so as to allow its reopening under Rule 60(b)(5), one is almost compelled to conclude that the decree is prospective in nature. The majority asserts that the decree "adjudicated all the rights as between the parties as of the date of the judgment," and, therefore, the judgment is not prospective and

I.R.C.P. 60(b)(5) may not apply in the instant case. Such argument, however, fails to account for the very nature of the military retirement benefits themselves. They are paid on a monthly basis, contingent upon the survivorship of both the military service person and the divorced spouse. Additionally, Mr. McBride's military retirement benefit payments began in July 1983, over six months after the divorce decree became final. (*See, Rudd v. Rudd*, 105 Idaho 112, 666 P.2d 639 (1983). The requirements of Rule 60(b)(5) have been met in the instant case.

I would adopt the reasoning in *Flannagan* and, pursuant to I.R.C.P. Rule 60(b)(4) and (5), allow for the reopening of Mrs. McBride's divorce decree to allow for reconsideration of that portion of Mr. McBride's military retirement benefits accrued during his marriage to Frances McBride as community assets.

Should this dissent inspire a petition for rehearing, and the granting thereof, it would be well if the parties would brief and argue the applicability of an earlier opinion of this Court not heretofore argued which would seem to impact mightily on our disposition of this appeal. That case is *Duthie v. Lewiston Gun Club*, 104 Idaho 751, 663 P.2d 287 (1983), wherein this Court stated in an opinion authored by Justice Donaldson and concurred in by Justice Bakes:

> Even though two actions may arise out of the same operative facts between the same parties this Court has also stated that "[h]owever, sometimes a single trial covering all aspects of the case will be neither desirable nor feasible. Evidence bearing upon one aspect of a case may be unduly prejudicial with respect to another. Or certain matters may be ripe for trial while consideration of others would be premature." *Heaney v. Board of Trustees of Garden Valley School District No. 71*, 98 Idaho 900, 903, 575 P.2d 498, 501 (1978).
>
> In this case facts occurred subsequent to the first trial that led to the filing of the second suit, i.e., the cutting and capping of the waterline. Therefore, even though the same facts may be used to determine whether the license was revocable as were used in the first action to determine whether a license existed, because facts occurred subsequent to the first trial that triggered the filing of the second suit, we hold that the issue of revocability was not ripe for trial in the first case, but rather, was premature until the license was actually revoked. *Heaney, supra.* Therefore, we uphold the trial court's decision that res judicata does not bar the raising of the issue of revocability in the second suit.

It would seem the same consideration would apply more fully here, especially since we are dealing with proceedings in the same action and not deal with a subsequent lawsuit as was the case in *Duthie*.

### ON REHEARING

A petition for rehearing in this matter was granted, and the cause was reargued.

SHEPARD, C.J., and DONALDSON and BAKES, JJ., continue to adhere to the views expressed and the conclusion reached in the January 7, 1987 opinion.

BISTLINE, Justice, dissenting.

Unlike the three justices who continue to adhere to the views expressed and the conclusion reached in the majority opinion of January 7, 1987, I do not so continue, and, even were I to do so, I would deem it unbefitting that this, the highest court in Idaho, virtually beyond being held accountable for that which it does and that which it does not do, flatly does not deign to address the issues which were well presented to it on the rehearing which was granted.

There has been a procedure for petitioning this Court for a rehearing since statehood in 1889, and even before that. In territorial days, when the Idaho Supreme Court consisted of three federally appointed district judges, it was apparently reasoned that a party dissatisfied with the "views and conclusions" of a Supreme Court opinion should have the right to explain and argue the grounds of dissatisfac-

tion. Rules of the Supreme Court of the Territory of Idaho, volume 1, Idaho Reports, pp. 23–30. Rule XXVIII thereof provided that:

> All motions for a rehearing shall be upon petition in writing presented within five days after the judgment or order made by the court, and before the adjournment of the court for the term, and no argument will be heard thereon.
>
> No remittitur or remandate to the court below shall be issued until after the expiration of ten days from the entry of judgment, and all decisions upon petitions for rehearing shall be made before the adjournment of the term.

Rule XXXI informs us that were former rules of practice in the Supreme Court, and the set of rules found in vol. 1 promulgated had an effective date of January 2, 1882.

No one has ever questioned the reason for the rule. The rule serves the purpose of giving the Court another opportunity to review the validity of an opinion for the court which has been issued and reviewed by those persons, the involved attorneys, who will best know if the court as a whole has understood the issues presented to it, and whether authority cited in the court's opinion is reliable, and/or, if it has proper application. Best of all, it presents each *individual justice* who has joined some other justice's opinion with an opportunity to ascertain whether he has joined an unsound opinion which, perhaps, misstates the facts, misstates the law, or has ignored certain facts and has ignored recognized principles of law.

In this particular instance, the case being before us for a second time, the reader of the majority opinion on rehearing would surmise that the petition for rehearing was inadequate and/or a supporting brief was not submitted, or if filed, was not in the least persuasive, and could be turned aside as being of no merit. However, as the dissenting opinion of Huntley, J., unrefuted anywhere in the majority opinion of January 2, 1987, makes quite clear, the validity

of that opinion was open to question: "The voluntariness with which Mrs. McBride entered into the agreement, upon which Justice Shepard so heavily relies, cannot be deemed meaningful in the absence of knowledge of both the USFSPA and its retroactivity." Jan. 2, 1987, Dissenting Op. p. 265. Justice Huntley also raised another good point relative to the majority opinion's assertion that military retirements are, and were at the time of the divorce, in futuro, *i.e.*, prospective.

The brief of counsel for Mrs. McBride filed in support of the petition for rehearing raises a serious question as to the validity of the majority opinion even beyond the problems seen by Justice Huntley, and in particular with the majority's res judicata and finality of judgments theory.[1] The brief is well written, and it would be inefficient to paraphrase its content—which is concise and direct. It reads:

The majority opines that "to hold under the instant circumstances that there is a lack of equity would only operate to destroy the finality of judgment." (87 ISCR 1, 8). The majority has held that the doctrine of res judicata applies to the facts shown above.

*Black's Law Dictionary*, 1470 (Rev'd 4th ed. 1968), in defining *res judicata* states in part:

"Rule that final judgment or decree on merits by court of *competent jurisdiction* is conclusive of rights of parties or their privies in *all later suits* on points and *matters determined in former suit. American S.S. Co. v. Wickwire Spencer Steel Co.*, D.C.N.Y. [1934], 8 F.Supp. 562, 566." (textual emphasis added)

In the case at bar res judicata does not apply because: (1) due to *McCarty* the court, at the time of decree, did not have competent jurisdiction to divide military retirement in a divorce; (2) the current action is not a later suit, but rather a motion to reopen; and (3) res judicata applies only to matters determined or able to be previously determined.

---

1. This member of the Court finds interesting the brief of respective counsel wherein the applicability of the *Duthie* case is discussed. *Duthie* was a judicial accident which should never have happened, and until overturned leaves that area of the law in shambles.

Even if this doctrine is held applicable, the court, in *Duthie v. Lewiston Gun Club*, 104 Idaho 751, 663 P2d 287 (1983), after twice considering the issues therein, held that res judicata did not bar the raising of an issue that was not ripe for trial in the first case. (104 Idaho 751 at 753 [663 P.2d 287]) The court in *Duthie*, cited *Intermountain Food Equipment Co. v. Waller*, 86 Idaho 94, 383 P2d 612 (1963), for determining when res judicata applies. The court cited that case, in part, as follows:

"We think the correct rule to be that in an action between the same parties upon the same claim or demand, *the former adjudication concludes parties* and privies not only *as to every matter* offered and received to sustain or defeat the claim, but also as to every matter *which might* and should have been litigated in the first suit." Id at 98, 383 P2d at 615 (quoting *Joyce v. Murphy Land & Irrigation Co.*) 35 Idaho 549, 553, 208 P 241, 242 (1922).

*Duthie*, 104 Idaho 751, 753 [663 P.2d 287].

The court goes on to seemingly support appellant's position in this case by citing other Idaho authority with approval:

"(h)owever, sometimes a single trial covering all aspects of the case will be neither desirable nor *feasible* ... or certain matters may be ripe for trial while consideration of others would be premature." *Heaney v. Board of Trustees of Garden Valley School District No. 71*, 98 Idaho 900, 903, 575 P2d 498, 501 (1978). (Emphasis added)

In the *Duthie* case, affirmative action by one of the parties changed the facts of the case and the court held res judicata did not apply. In the case at hand, affirmative action by the Congress of the United States in a specific attempt to cure the effect of *McCarty*, with specific retroactive provisions, is held by the court to not be of enough significance to alter the initial scenario. USFSPA was intended to not merely *overrule McCarty* as the majority states (71 ISCR 1, 4) but to cure the inequities it had created. In *Duthie*, the issue of revo-

cation *could* have been raised and litigated in the first *Duthie* case, but in the case at hand the issue of division of military retirement division was affirmatively barred from being raised at the time of the divorce until later retroactively cured.

The majority opinion relies on the fact that the appellant entered into an agreement and took a default judgment to obtain the decree. The fact that the appellant had no legal right at the time to do otherwise is ignored. Under this theory all attorneys must ignore Rule 11 and contest clear precedent to preserve possible future rights.

The one thing that makes this case different from all other cases is the procedural background. There was a clear policy to divide military retirement pursuant to community property principles. (*Ramsey*) There was an erroneous judicial determination of congressional intent. (*McCarty*) There were injustices due to the 20 month window or gap between *McCarty* and the corrective measure of USFSPA. There was a prompt congressional response to *McCarty* with the specific purpose of retroactively curing the inequities created by *McCarty*. (USFSPA) There are procedural mechanisms under the Federal and Idaho Rules of Civil Procedure to cure the inequities created by *McCarty* to allow all similarly situated parties from the date of *Ramsey* until the effective date of USFSPA to be treated equally. (IRCP, Rule 60(b)(4) & (5)) There is precedent in cases with far less compelling fact situations that res judicata does not apply. (*Duthie*, supra; *Heaney*, supra;) Then there is *McBride (Yockey) v. McBride*, the only piece of the puzzle that does not fit.

The majority opines that IRCP 60(b)(4) is not available as a procedural mechanism to reopen and cites *Nieman v. Nieman*, 105 Idaho 796, 673 P.2d 396 (1983) as authority. It is respectfully submitted that *Nieman* is easily distinguishable and inapplicable. *Nieman* did not involve a curative statute with a provision specifically making the change retroactive. This is an unusual and

major step beyond finding precedent incorrect.

The majority opinion, in attempting to bar the use of IRCP, Rule 60(b)(5) makes a surprising statement of fact. At 87 ISCR 7 in footnote two (2) the court found; "The testimony of both parties is not in dispute that Yockey was aware of the Congressional enactment ..." That conclusion which Justice Huntley highlights in the dissent (87 ISCR 1 at 10) is completely contrary to Mrs. Yockey's deposition.

"It was my understanding at that time that I could not .. the current court ruling and the current law stated that I could not try to get to a portion of his retirement as community property, and that was what I believed to be the case at that point in time.... I made a decision at that time that I couldn't do anything else, the law wouldn't let me."

Not only was that Mrs. Yockey's understanding, it was a fact.

The court, in the same footnote, summarily disagrees that the division of property is inequitable. The court makes this finding despite the fact that using the evidence most favorable to and supplied by Mr. McBride (contrary to the applicable burden of proof) he valued the real and personal property at $107,400.00, of which, again by his reckoning, he received $50,250.00 and Mrs. Yockey received $57,150.00. Then, still using Mr. McBride's testimony, the military retirement is valued at $432,000.00. If the correct equitable division of military retirment benefits is made, pursuant to the dictates of USFSPA, Mrs. Yockey is entitled to $147,355.00 from that asset alone, nearly three times the value of what Mr. McBride concedes she received. Using Mr. McBride's figures, he has received $467,250.00 from the "substantially equal" split of the property and his ex-wife received $57,150.00 in value. The court finds the approximately 10% award of property for the wife and the 90% award for the husband equitable.

It would be a strange type of equity to hold that because appellant made an agreement based on the law as it existed, she is barred from taking advantage of a curative statute specifically enacted to resolve the exact inequity created herein.

The majority apparently finds the $48,154.00 cash award was intended to equalize the award of military retirement benefits to Mr. McBride, despite; (1) the obvious inequity detailed above; (2) the fact the law, as it then existed, did not allow such an equalization; (3) deposition testimony by Mrs. Yockey that the payment was intended to offset the award of real property to Mr. McBride; (4) the fact it was, by applicable precedent, separate property, but the offsetting award was made, as the majority acknowledges, "to make an even division of the community assets ..." (87 ISCR 1, 2) (emphasis added) and; (5) the fact the husband, not the wife, should have had the burden of proof on his motion to dismiss, and pursuant to such motion all facts, intendments and inferences that may be reasonably drawn must be viewed most favorably as to the party opposing such motion. *Idaho Commission on Human Rights v. Campbell*, 95 Idaho 215, 217, 506 P2d 112 (1973).

CONCLUSION

The intent of Congress, in passing USFSPA, is clearly shown in the legislative history:

"The purpose of this provision is to place the courts in the same position that they were in on June 26, 1981, the date of the *McCarty* decision, with respect to treatment of non-disability military retired or retainer pay. The provision is intended to remove the federal preemption found to exist by the United States Supreme Court and permit state and other courts of competent jurisdiction to apply pertinent state or other laws in determining whether military retired or retainer pay should be divisible. Nothing in this provision requires

any division; it leaves that issue up to the court supplying community property, equitable distribution or other principles of marital property determination and distribution. *This power is returned to the court retroactive to June 26, 1981.* This retroactive application will at least afford individuals who were divorced (or had decrees modified) during the interim period between June 26, 1981 and the effective date of this legislation the opportunity to return to the courts to take advantage of the provision.

(Senate Report S.Rep. No. 502, 97th Congress, 2nd Session 16, reprinted in 1982 U.S. Code Congresson and Ad. News 1555, 1596, 1611. (Emphasis added).

The current opinion in this case does not afford this individual the opportunity to return to court to take advantage of USFS-PA.

It seems appropriate to again quote <u>the</u> <u>closing lines of the U.S. Supreme Court's</u> <u>majority opinion in *McCarty*</u> where Justice Rehnquist prophetically wrote:

"... *Congress may well decide,* as it has in the Civil Service and Foreign Service contexts, that more protection should be afforded a former spouse of a retired service member. *This decision, however, is for Congress alone.* We very recently have re-emphasized that *in no area has the Court accorded Congress greater deference than in the conduct and control of military affairs.* See *Rostker v. Goldberg,* [453 U.S. 57] *ante.* at 64–65, 69 L.Ed.2d 478, 101 S.Ct. 2646 [ (1981) ].

Thus, the conclusion that we reached in *Hisquierdo [v. Hisquierdo ],* follows a fortiori here:

*Congress has weighed the matter, and 'it is not the province of state courts to strike a balance different from the one Congress has struck.'* 439 U.S. [572] at 590, 59 L.Ed.2d 1, 99 S.Ct. 802 [at 813] (1979).

*McCarty v. McCarty,* 453 U.S. 210, 235–236 [101 S.Ct. 2728, 2742–743, 69 L.Ed.2d 589] (1981) (Emphasis added).

It is respectfully submitted that the present opinion strikes a balance different from the one Congress has struck and is contrary to Idaho precedent.

(Double underscoring emphasis added.)

Those who remain with the earlier majority opinion would better serve the litigants, the trial bench and bar, and future litigants were something written pointing out the error in the facts or conclusions of the Yockey brief. In particular, when we *first* heard this case, it seemed to me that under existing pertinent law as Mrs. Yockey knew, and as many lawyers also knew or so believed, the military pension rights of her husband were not part of the community assets, and that she had no claim on the same. In particular, the Yockey brief should hit a responsive chord somewhere in the majority when it challenges the final sentence of footnote 2 of the majority opinion stating that Mrs. Yockey was aware of the *McCarty* nullification legislation during settlement negotiations. If this be so, and it is certainly to be assumed that every statement of law or fact in the majority opinion is as portrayed, then it would work no great effort and consume little time to point to the evidence which contradicts, impeaches, or destroys Mrs. Yockey's own sworn testimony restated both per Justice Huntley and the Yockey rehearing brief.

Just before the Court heard oral argument on the rehearing we were made aware of legislative action being taken by the Idaho Legislature as to implement on argument or somehow make certain that the benefits of the Act of Congress would accrue in Idaho as well as in the 49 other states of the Union. Justice Huntley's dissenting opinion of this date mentions it. The governor approved the bill on March 24th of this year, just two weeks before oral argument was heard on April 8th. Counsel for Mrs. Yockey discussed its applicability in his opening remarks.

One may well surmise that this legislation, and the expression of legislative will and intent would be in the minds of counsel a matter of proper concern and discussion for the members of the Court. If the majority opinion has given any mention to this statute, then I am remiss in my reading capabilities. Maybe it is all a dream? However, Justice Huntley has mentioned it.

Perhaps those who comprise the majority share Justice Huntley's belief that, because of the lack of an emergency clause, the Idaho legislation does not become effective until July 1st. Justice Huntley apparently believes that it is on that date that Mrs. Yockey will have to begin anew her quest for the benefits of the Congressional anti-McCarty legislation. Perhaps he, and the majority are correct in that view, but I think not.

True, the legislation, copy of which is appended, does not contain an emergency clause. BUT, equally true, the very first thing the statute provides is an effective date, and that effective date commences with June 25th, 1981, and, per § 4 its effectiveness ceases, and it is automatically repealed, and null and void as of July 1, 1988. Section 1 makes it applicable to all community property settlements, judgments, or decrees which became final during the period of time from June 25, 1981, until February 1, 1983.

Why does it apply to a McBride property settlement signed October 31, and a divorce decree entered November 22, 1982? Simply because the date of the Property Settlement and the date of the Divorce Decree both fall after June 25, 1981—but before February 1, 1983.

The unspoken view of the majority that the legislation does not go into effect until July 1, 1987, runs contrary to the language of the legislation itself. Moreover, the requirement of a declaration of an emergency went out the window with this Court's opinion in *Idaho State AFL–CIO v. Leroy*, 110 Idaho 691, 718 P.2d 1129 (1986). From the date of that decision by this Court, the constitutional provision requiring the existence of an emergency[2] has ceased to exist. *A fortiori,* and because when the reason for a rule ceases to exist, the rule itself ceases to exist, then this Court's decision obliterated not only the requirement that an emergency actually existed, as Judge Newhouse ruled, *see* 718 P.2d at 1137, 110 Idaho at 699, there is no valid reason for the legislature any longer to mouth the words that "an emergency exists" in setting the effective date of its statutory enactments.

Here, not only is the Act in question clear in declaring an effective date (and an ineffective date) which coincides with the Congressional legislation, but the legislature's statement of purpose fortifies the fact that legislative intent was to have in place, an effective remedy matching the federal act. That statement is extremely well worded:

STATEMENT OF PURPOSE

*Background:* A U.S. Supreme Court decision handed down on June 26, 1981, precluded military retirement pensions from consideration as community property in divorce cases.

The court in its decision urged Congress to correct the situation which it did by enacting the Federal Uniformed Services Former Spouses Act (U.S.Code 1408) providing that military retirement pensions can indeed be considered as community property. The bill was enacted on February 1, 1983.

In Idaho, this left a gap of two years during which courts were unable to treat military retirement pensions as community property.

*Purpose:* This bill would correct that inequity and provide a procedural mechanism to permit courts to reopen the few military divorce cases that fell into that 2 year gap.

FISCAL IMPACT:

None

The final line is key to the legislative intent which was to *"correct that inequity and provide a procedural mechanism to permit courts to reopen the few military divorce cases that fell into that 2 year gap."*

What surfaces all too clearly in the majority disposition of this case, and its refusal to even mention the Idaho legislation, is the overriding obsession of one member of the Court, unfortunately joined by two oth-

---

2. Idaho Const., art. 3, § 22 provides:

§ 22. **When acts take effect.**—No act shall take effect until sixty days from the end of the session at which the same shall have been passed, except in case of emergency, which emergency shall be declared in the preamble or in the body of the law.

ers, that unless *the inequity* can be cured by one of the court's plethora of rules, it cannot be done at all.

A principle entirely forgotten by those who are today's majority, is that rules sometimes emanate from appellate decisions. The 1882 rules promulgated by the Territorial Supreme Court specifically stated that *rules of practice established in the decisions of the court shall remain in force as heretofore,* and were in addition to those made administratively—which were few, thirty-one in all.

Today, we have a court which has so fettered itself with rules made administratively, that it has well-nigh emasculated itself. One recent exception comes to mind. In *Minnich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979), the Court by *decision,* and not by rule, held "that the statutory power to award attorney's fees applies to the members of this Court as well as to the district judges throughout the state." Today, in stark contrast, the Court has the statutory power to correct an inequity, but turns it away ostensibly because the statutory power does not fit into any particular pigeonhole of the various court-made rules affording relief from judgments.

Todays' inaction by the majority presents a sad commentary on the intellect and capabilities of this Court to function as earlier courts have functioned. Finding itself with a 613 page bound volume of rules plus a 1986 pocket parts of 357 more pages of rules, but without a specific rule thought applicable to applying a legislative remedy, this Supreme Court will be unique in deeming itself no longer able to act by deciding a case which will itself provide a case-law rule notwithstanding a legislative enactment which is all the authority needed. APPENDIX ATTACHED.

### APPENDIX

### LEGISLATURE OF THE STATE OF IDAHO

Forty-ninth Legislature

First Regular Session—1987

IN THE SENATE

SENATE BILL NO. 1076

BY JUDICIARY AND RULES COMMITTEE

### AN ACT

RELATING TO ACTIONS FOR DIVORCE; AMENDING CHAPTER 7, TITLE 32, IDAHO CODE, BY THE ADDITION OF A NEW SECTION 32–713A, IDAHO CODE, TO ALLOW MODIFICATION OF COMMUNITY PROPERTY SETTLEMENTS, JUDGMENTS, OR DECREES WHICH BECAME FINAL IN THE PERIOD OF JUNE 25, 1981, TO FEBRUARY 1, 1983, BY ALLOWING THE INCLUSION OF MILITARY RETIREMENT BENEFITS IN THE SETTLEMENT, JUDGMENT, OR DECREE, TO PROVIDE A STATUTE OF LIMITATIONS, AND TO PROVIDE A SUNSET CLAUSE.

Be It Enacted by the Legislature of the State of Idaho:

SECTION 1. That Chapter 7, Title 7, Idaho Code, be, and the same is hereby amended by the addition thereto of a *NEW SECTION*, to be known and designated as Section 32–713A, Idaho Code, and to read as follows:

32–713A. MODIFICATION OF DIVORCE DECREE—EFFECTIVE DATE. 1. Community property settlements, judgments, or decrees that became final on or after June 25, 1981, and before February 1, 1983, may be modified to include a division of military retirement benefits payable on or after February 1, 1983, in a manner consistent with federal law and the law of this state as it existed before June 26, 1981, and as it has existed since February 1, 1983.

2. Modification of community property settlements, judgments, or decrees under this section may be granted whether or not the property settlement, judgment, or decree expressly reserved the pension issue for further determination, omitted any reference to a military pension, or assumed in any manner, implicitly or otherwise, that a pension divisible as community property before June 25, 1981, and on or after February 1, 1983, was not, as of the date the

**974**

property settlement, judgment, or decree became final, divisible community property.

3. Any proceeding brought pursuant to this section shall be brought before July 1, 1988.

4. This section shall remain in effect until July 1, 1988, and on that date it is repealed and null and void.

HUNTLEY, Justice, dissenting.

I thoroughly detailed my views supporting the limited reopening of those divorce decrees which became final during the twenty-month effective period of *McCarty* in my dissent to the initial majority opinion. I noted the extraordinary circumstances which required such a view: congressional intent, the speed with which congress enacted the USFSPA, the limited number of decrees which became final during the *McCarty* era, the anomaly of disparate treatment between those with decrees finalized during *McCarty* and those with earlier or later decrees. I still adhere to those views, but feel compelled to further note that by denying rehearing this Court is needlessly delaying this case and perpetuating litigation in an area where our state legislature has recently provided us with express guidance.

Since our initial decision in this case, the legislature passed Senate Bill 1076, 1987 Idaho Session Laws, Chapter 68, effective July 1, 1987. Senate Bill 1076 was enacted to allow modification of community property settlements, judgments or decrees which became final between June 25, 1981 and February 1, 1983 by allowing the inclusion of military retirement benefits.

As Idaho has no formal, written legislative history for us to draw upon, I would be hard pressed to point to a more obvious expression of legislative intent than that which surely preceded the passage of S.B. 1076, as it specifically operates to control the effective dates of *McCarty*.

For this Court to ignore S.B. 1076 by denying rehearing in this matter, thereby entailing needless and expensive future litigation by the McBrides, is a slap in the face to this state's legislature and shows blatant and calculated disregard of its in-

tent. Not content in ignoring the *stated* intent of the U.S. Congress in its first opinion, the majority now disregards the actions of the state legislature as well.

Our failure to either adhere to the mandate of the Idaho Legislature or to refer this case back to the trial court for consideration of the effect of the 1987 Idaho legislation, proves unnecessarily costly to both litigants because nine days after this opinion issues, that is, shortly after July 1, 1987, plaintiff will be filing an action for relief under that Idaho statute. The parties will then have to litigate the matter in district court, and if this litigation runs true to form, whichever side loses will appeal to this court, and we will have this issue squarely presented to us. It is already squarely presented to us and our lack of openness to entertain the proceeding now, gains nothing other than to cost the litigants money and add to the burden on the court system.