[Nos. 7591–1–II; 7684–5–II.   Division Two.   November 25, 1985.]

*In the Matter of the Marriage of* JOHN T.
FLANNAGAN, *Petitioner, and* BEATRICE A.
FLANNAGAN, *Respondent.*

*In the Matter of the Marriage of* EDMUND BELFOUR
BOSSART, JR., *Respondent, and* LILLIAN
SCHMIDT BOSSART, *Appellant.*

*James K. Sells* and *McCluskey, Sells, Ryan, Olbertz & Haberly,* for petitioner.

*Ronald T. Schaps, Robert A. Stewart,* and *Bogle & Gates,* for appellant.

*Marcia A. Mellinger,* for respondent Flannagan.

*Thurman W. Lowans* and *Soriano, Soriano, Lowans & Peterson,* for respondent Bossart.

ALEXANDER, J.—The issue presented in these consolidated cases is whether the Uniformed Services Former Spouses Protection Act (USFSPA) may be applied retroactively to dissolution decrees that were final and were not appealed after the Supreme Court decision in *McCarty v. McCarty* and before enactment of the USFSPA. While we recognize the importance of finality of judgments, some situations justify an exception to this "doctrine of finality." We hold that the circumstances presented in these cases are sufficiently extraordinary to permit the use of a CR 60(b)(11) motion to reexamine the final decrees in light of the USFSPA.

The United States Supreme Court decided *McCarty v. McCarty,* 453 U.S. 210, 69 L. Ed. 2d 589, 101 S. Ct. 2728 (1981) on June 26, 1981. The Court held that state courts were prohibited from distributing military retirement payments as part of community property.[1] In response to *McCarty,* Congress passed the Uniformed Services Former Spouses Protection Act, 10 U.S.C. § 1408. The USFSPA

---

[1]The courts were also prohibited from offsetting the award of retirement payments to the military spouse with an award of other properties to the nonmilitary spouse. *In re Marriage of Smith,* 33 Wn. App. 147, 151–52, 652 P.2d 391 (1982).

took effect on February 1, 1983. We will refer to the interval between these events as the "*McCarty* period."

## FLANNAGAN DISSOLUTION

John and Beatrice Flannagan were married in 1960 and were separated in 1981, 2 years after John retired from the Navy. They jointly petitioned for dissolution in Kitsap County Superior Court on January 15, 1982, without assistance of counsel. The Flannagans ultimately agreed to a property settlement, although it was not preceded by a written separation agreement. The decree of dissolution was entered on May 21, 1982. In the decree, John was awarded "[a]ny and all interest in his Navy retirement." Beatrice did not appeal from the entry of the decree. In April 1983, she filed a motion to reopen the decree under CR 60(b), claiming that the USFSPA overturned *McCarty* and allowed for division of military retirement payments in final decrees entered during the *McCarty* period. The trial court granted the motion pursuant to CR 60(b)(11), stating that "for [the court] not to at least consider the community nature of the pension in this case would be grossly inequitable." John Flannagan appeals from that order.[2]

## BOSSART DISSOLUTION

Edmund and Lillian Bossart were married in 1959, separated in 1978, and commenced an action for dissolution in Kitsap County in 1981. Although they did not enter into a written separation agreement, each was represented by counsel and agreed to a property settlement. The decree of dissolution was entered on August 26, 1981, and a supplemental decree containing the property distribution scheme was entered on June 9, 1982. The trial court awarded Edmund "[a]ny and all right, title or interest in the retirement from government service through the U.S. Navy in accordance with the decision of *McCarty* of the United

---

[2]The grant of a motion to reopen under CR 60(b) is not appealable as a matter of right. However, in light of the consolidation with the Bossart case and the importance of the issue, we grant discretionary review. RAP 2.3(b)(3).

States Supreme Court decided in June of 1981." However, the judge struck out the next clause of the proposed decree that stated "said award also being fair and equitable under the circumstances of this agreed division of the assets." Edmund was still in active Navy service at this time and was not receiving retirement benefits. Lillian did not appeal from the decree. She filed a motion to reopen under CR 60(b) on June 8, 1983, making a claim similar to that of Mrs. Flannagan. A judge pro tempore denied the motion, stating that "to allow a subsequent enactment to have retroactive effect on otherwise final judgments of courts could, and most likely would, have chaotic results." Lillian Bossart appeals from the denial of the motion to reopen.[3]

## USFSPA

The USFSPA was enacted in response to the *McCarty* decision. The provision that defines its potential retroactive effect reads as follows:

> Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981 [the date of the *McCarty* decision], either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

10 U.S.C. § 1408(c)(1).

The Washington Supreme Court has stated that this subsection and its legislative history mean that "Congress intended that the USFSPA apply retroactively to eliminate all effects of the *McCarty* decision." *In re Marriage of Konzen*, 103 Wn.2d 470, 474, 693 P.2d 97, *cert. denied*, ___ U.S. ___, 87 L. Ed. 2d 654, 105 S. Ct. 3530 (1985). However, the decree in *Konzen* was entered before *McCarty* and was subject to appellate review throughout the *McCarty* period. The question of finality did not arise.

Division One of the Court of Appeals has recently

---

[3]The denial of the motion to reopen is appealable as a matter of right. RAP 2.2(a)(3).

applied the USFSPA retroactively to a decree that was final
and not appealed during the *McCarty* period. *In re Mar-
riage of Giroux,* 41 Wn. App. 315, 322, 704 P.2d 160 (1985).
The court emphasized what it believed was the congres-
sional intent for retroactive application[4] and allowed the
use of CR 60(b)(6) or CR 60(b)(11) to reopen the final
decree.[5] However, the court did not discuss the potential
conflict with the doctrine of finality. We believe the doc-
trine of finality of judgements is of great importance, and
must be considered in any analysis of the retroactive appli-
cation of the USFSPA to final decrees. While we also con-
clude that these final decrees may be reopened under CR
60(b)(11), we emphasize the importance of finality and the
limited nature of our deviation from the doctrine.

---

[4]The legislative history provides: "The purpose of this provision is to place
the courts in the same position that they were in on June 26, 1981, the date of the
*McCarty* decision, with respect to treatment of non–disability military retired or
retainer pay. The provision is intended to remove the federal pre–emption found
·to exist by the United States Supreme Court and permit State and other courts of
competent jurisdiction to apply pertinent State or other laws in determining
whether military retired or retainer pay should be divisible. Nothing in this pro-
vision requires any division; it leaves that issue up to the courts applying commu-
nity property, equitable distribution or other principles of marital property
determination and distribution. This power is returned to the court retroactive to
June 26, 1981. This retroactive application will at least afford individuals who
were divorced (or had decrees modified) during the interim period between June
26, 1981 and the effective date of this legislation the opportunity to return to the
courts to take advantage of this provision." *See Giroux,* 41 Wn. App. at 318–19,
quoting S. Rep. No. 502, 97th Cong., 2d Sess. 16, *reprinted in* 1982 U.S. Code
Cong. & Ad. News 1596, 1611.

[5]CR 60(b) provides:

"On motion and upon such terms as are just, the court may relieve a party or
his legal representative from a final judgment, order, or proceeding for the follow-
ing reasons:

". . .

"(6) The judgment has been satisfied, released, or discharged, or a prior judg-
ment upon which it is based has been reversed or otherwise vacated, or it is no
longer equitable that the judgment should have prospective application;

". . .

"(11) Any other reason justifying relief from the operation of the judgment."

### FINALITY IN DISSOLUTION DECREES

The divisibility of military retirement payments in a dissolution has had a turbulent history. The rules for considering such payments upon dissolution have been modified three times in the past 12 years. After each change, attempts have been made to apply the new rule retroactively. The first two attempts were rejected on the grounds of finality. In 1973, the Supreme Court clearly stated that military retirement payments were subject to division in a dissolution. *Payne v. Payne,* 82 Wn.2d 573, 512 P.2d 736 (1973). Subsequently, this court rejected an attempt to apply *Payne* retroactively in *Martin v. Martin,* 20 Wn. App. 686, 581 P.2d 1085 (1978). We held that the policy interest favoring finality in property settlements would be undermined by reexamination of every military divorce before *Payne* and concluded that "[t]he parties ought to be bound to the rules as they were generally understood at the time of divorce." *Martin,* 20 Wn. App. at 690.

In the second attempt, the Washington Supreme Court refused to apply *McCarty* retroactively. *In re Marriage of Brown,* 98 Wn.2d 46, 653 P.2d 602 (1982). The court began by stating "in the conflict between the principles of finality in judgments and the validity of judgments, modern judicial development has been to favor finality rather than validity." *Brown,* 98 Wn.2d at 49. It concluded that the inequity of applying *McCarty* retroactively exceeded the inequity of solely prospective application. *Brown,* 98 Wn.2d at 52. The court refused to allow reopening of the petitions under CR 60(b).

In this third attempt, the former Mrs. Flannagan and Mrs. Bossart (the wives) seek retroactive application of the USFSPA. The language of the act does not require retroactive application by the state courts, but it is allowed and appears to be anticipated. However, the desire to apply the act retroactively must be weighed against the damage that would be inflicted on individuals' reliance on the finality of dissolution decrees. These prior Washington cases demonstrate the importance of finality and appear to lead to a

conclusion that the USFSPA should not be applied retroactively to final decrees. We now examine how other states have reconciled the conflict between finality and retroactivity under the USFSPA.

## RETROACTIVITY IN OTHER STATES

Most courts in other jurisdictions that have considered the retroactive application of the USFSPA to final decrees have allowed reopening, when a procedural mechanism existed for such reopening. *Edsall v. Superior Court,* 143 Ariz. 240, 693 P.2d 895, 898 (1984); *Smith v. Smith,* 458 A.2d 711, 714 (Del. Fam. Ct. 1983); *Castiglioni v. Castiglioni,* 192 N.J. Super. 594, 471 A.2d 809, 811 (1984); *Koppenhaver v. Koppenhaver,* 101 N.M. 105, 678 P.2d 1180, 1184 (Ct. App. 1984); *Thorpe v. Thorpe,* 123 Wis. 2d 424, 367 N.W.2d 233, 234 (Ct. App. 1985). *Edsall, Smith,* and *Koppenhaver* discussed the finality doctrine and concluded that the balance of equities favored reopening over finality.

Two courts have refused to reopen decrees because of the doctrine of finality. *In re Marriage of Quintard,* 691 S.W.2d 950, 953 (Mo. Ct. App. 1985); *Allison v. Allison,* 690 S.W.2d 340, 345 (Tex. Ct. App. 1985). However, in each case the court noted that finality was considered such an important doctrine in their state that no CR 60(b)(11)–type rules had been created. Other courts have refused to open specific final decrees because of an insufficient showing of inequity. *In re Marriage of Habermehl,* ___ Ill. App. 3d ___, 481 N.E.2d 782 (1985); *Harkins v. Harkins,* 101 N.M. 296, 681 P.2d 722, 723 (1984). We have found no cases where the doctrine of finality prevailed over the inequity of denying retroactivity, so long as a procedural mechanism such as CR 60(b)(11) existed for retroactive application.

The weight of authority from other states leads to a conclusion favoring retroactivity over finality in applying the USFSPA. The *Giroux* opinion follows the lead of those other states. However, the prior Washington decisions in *Martin* and *Brown* support a conclusion favoring finality over retroactivity. We now consider the procedural mecha-

nism that permits reconciliation of these competing interests.

## EXTRAORDINARY CIRCUMSTANCES

■ CR 60(b)(11) allows relief from a judgment for "[a]ny other reason justifying relief from the operation of the judgment." This rule is identical to Federal Rule of Civil Procedure 60(b)(6). The United States Supreme Court has held that this rule "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. United States,* 335 U.S. 601, 615, 93 L. Ed. 266, 277, 69 S. Ct. 384, 390 (1949). However, "extraordinary circumstances" must be shown to gain relief under Fed. R. Civ. P. 60(b)(6). *Ackermann v. United States,* 340 U.S. 193, 200, 95 L. Ed. 207, 211, 71 S. Ct. 209, 212 (1950).

Washington has applied a similar standard to CR 60(b)(11) motions. Use of the rule "should be confined to situations involving extraordinary circumstances not covered by any other section of the rule." *State v. Keller,* 32 Wn. App. 135, 140, 647 P.2d 35 (1982). The circumstances must relate to "'irregularities which are extraneous to the action of the court or go to the question of the regularity of its proceedings.'" *Keller,* 32 Wn. App. at 141, quoting *Marie's Blue Cheese Dressing, Inc. v. Andre's Better Foods, Inc.,* 68 Wn.2d 756, 758, 415 P.2d 501 (1966). *See also In re Adoption of Henderson,* 97 Wn.2d 356, 360, 644 P.2d 1178 (1982) ("In light of the unusual circumstances of the case, . . ." use of CR 60(b)(11) was permitted).

Two courts have employed the "extraordinary circumstances" rule to reopen decrees that were final during the *McCarty* period. *Castiglioni,* 471 A.2d at 811, and *Koppenhaver,* 678 P.2d at 1184.[6] We agree that the *McCarty*

---

[6]The *Edsall* court approved the use of the "any other reason justifying relief" rule, but found that the wife had waived her claim to the pension. 693 P.2d at 901. See *infra* footnote 9. The *Smith* court found the USFSPA acted as a judicial reversal authorizing reopening under the Delaware equivalent of Washington's CR 60(b)(6) ("no longer equitable that the judgment . . . have prospective applica-

period cases present "extraordinary circumstances." Those circumstances are as follows: first, the clear congressional desire of removing all ill effects of *McCarty*;[7] second, the alacrity with which the Congress moved in passing the USFSPA; third, the anomaly of allowing division of the military retirement pay before *McCarty* and after USF-SPA, but not during the 20–month period in between; and fourth, the limited number of decrees that were final and not appealed during that period.

We conclude that the "extraordinary circumstances" basis for reopening final decrees under CR 60(b)(11) allows for the retroactive application of the USFSPA that Congress intended, without eroding the doctrine of finality.[8] We emphasize the limited nature of this exception. Allowing reopening in these cases will not provide a springboard for attacks on other final judgments.

We hold that CR 60(b)(11) may be used to reopen a decree that was final during the *McCarty* period. The motion must be brought "within a reasonable time . . ." CR 60(b). Once reopened, the trial court may then consider the effect that *McCarty* had on the decree. The court shall then exercise its discretion in determining whether the decree should be modified to consider the military retirement pay. Division of the retirement pay is not mandatory.

Motions for vacation or relief of a judgment under CR 60(b) are within the discretion of the trial court and will not be disturbed absent a clear abuse of discretion.

---

tion."). 458 A.2d at 714. In *Thorpe,* the court approved the trial court's discretion authority to reopen final decrees. 367 N.W.2d at 234.

[7]See footnote 4.

[8]The wives contend that the USFSPA operates as a curative statute to reflect what Congress actually intended regarding military retirement pay. The retroactive application of curative statutes has been approved. *In re Santore,* 28 Wn. App. 319, 324, 623 P.2d 702, *review denied,* 95 Wn.2d 1019 (1981). It is unclear whether the USFSPA acts as a curative statute because of the permissive language of 10 U.S.C. § 1408(c). Since we conclude that reopening is permissible in these extraordinary circumstances, we need not decide whether the USFSPA is a curative statute.

*Morgan v. Burks,* 17 Wn. App. 193, 197, 563 P.2d 1260 (1977). The discretion is abused when based on untenable grounds or reasons. *Davis v. Globe Mach. Mfg. Co.,* 102 Wn.2d 68, 77, 684 P.2d 692 (1984). The denial of the Bossart motion to reopen was based on concerns about the "chaotic results" that retroactivity would cause. Because retroactive application is proper under these extraordinary circumstances, the grounds for denial are untenable and constitute an abuse of discretion.

## FURTHER ISSUES

■ Mr. Flannagan and Captain Bossart (the husbands) have presented other reasons why their decrees should not be reopened. First, they contend that retroactive application of the USFSPA would divest their vested rights in the retirement payments awarded to them. We agree with *Giroux* that the proper test is "whether 'settled expectations honestly arrived at with respect to substantial interests' will be defeated." *Giroux,* 41 Wn. App. at 319–20, quoting 2 C. Sands, *Statutory Construction* § 41.05, at 261 (4th ed. 1973). The 20–month *McCarty* period was too short to establish a settled expectation that the retirement payments could not be divided. Both husbands had been married throughout the 8–year period between *Payne* and *McCarty,* when the payments were considered community property. The expectation that the payments would be considered in the property division was the expectation that had become settled, and it is now settled once more. The USFSPA did not divest the husbands of any vested rights.

The husbands' second claim is that the final decrees were res judicata on the issue of property division. For the doctrine of res judicata to apply, the issues must have been, or reasonably could have been, decided in the prior action. *Phillips v. Hardwick,* 29 Wn. App. 382, 386, 628 P.2d 506 (1981). In the Flannagan and Bossart decrees, the issue of dividing the retirement payments could not have been decided because of *McCarty.* Res judicata does not prevent

reopening the decrees. *See also Trahan v. Trahan,* 682 S.W.2d 332, 337 (Tex. Ct. App. 1984) (res judicata is not applicable when its application would "subvert the intent of Congress and the plain meaning of the Act which is to restore state law to what it was prior to the *McCarty* decision.").

The final contention is that the wives waived their rights to modify the decrees because they did not appeal the decree or because they accepted benefits under the decree. Any appeal that the wives would have pursued at the time the decree was entered would have been frivolous. The failure to file such an appeal does not waive the right to have the decree reopened. *Giroux,* 41 Wn. App. at 322. The wives' rights were not waived.[9]

### Conclusion

The extraordinary circumstances arising from the *McCarty* decision and the enactment of USFSPA justify an exception to the doctrine of finality of judgments. Decrees that became final during the *McCarty* period may be reopened under CR 60(b)(11) for an examination of the influence of *McCarty* on the decree. The party moving for reopening must allege facts that, if proved, would demonstrate that the property distribution was unfair or inequitable because of the application of *McCarty.* The court then has the discretion to divide the military retirement pay when needed to effect a fair and equitable property distribution. However, division of the military retirement pay or the allowance of an offsetting award is not mandatory provided the overall property distribution is fair and equitable. Accordingly, the order granting reopening in

---

[9]We recognize that some written property agreements may explicitly waive a spouse's right to receive a portion of the retirement payments. *See Edsall,* 693 P.2d at 896. The *Edsall* agreement granted all retirement payments to the husband, even if "future or pending legislation by the Congress or any other legislative body" entitled the wife to recover part of the payments. We have no such specific language in either property settlement before us. We do not reach the issue of waivers contained in written settlement agreements.

Flannagan is affirmed. The order denying reopening in Bossart is reversed.

WORSWICK, C.J., and PETRICH, J., concur.

Review denied by Supreme Court January 10, 1986.