772 P.2d 204

**James Lloyd CURL, Plaintiff-appellant,**

v.

**Carol Ann CURL,
Defendant-respondent.**

**No. 16395.**

Supreme Court of Idaho.

April 5, 1989.

Michael R. McLaughlin, Mountain Home, for plaintiff-appellant.

Francis H. Hicks, Mountain Home, for defendant-respondent.

BAKES, Justice.

Plaintiff husband appeals from the district court's order allowing modification of a divorce decree and remanding to the magistrate for further proceedings regarding awarding a portion of husband's military retirement benefits to his former spouse pursuant to the Uniform Services Former Spouses Protection Act (USFSPA).

The divorce decree became final post-*McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981) (ruling military retirement pay was the separate property of the military spouse), but pre-USFSPA, 10 U.S.C.A. 1408 (enacted February 1, 1983, retroactively allowing military retirement pay to be classified in conformance with state law).

The sole dispositive issue in this appeal, as acknowledged by both parties, is whether the district court erred in ruling that the instant divorce decree should be reopened in order to allow a modification of the distribution of appellant's military retirement benefits.[1] We conclude that the district court erred in allowing the decree of divorce in this case to be reopened.

I

Plaintiff appellant, James L. Curl, and defendant respondent, Carol A. Curl, were married on June 25, 1966. While appellant and respondent were married, appellant was a member of the United States Air Force. After 15 years of marriage the parties were divorced on November 10, 1981. Both were represented by legal counsel during all stages of the divorce proceeding. Appellant subsequently retired from the Air Force in February, 1985.

Plaintiff appellant James L. Curl filed his complaint seeking divorce on August 12, 1981. In his complaint he alleged that all the property of the parties, including the "military retirement benefits of [plaintiff], if any," was community property. The defendant Carol Curl did not appear or file an answer in the action, and the divorce was granted by default. However, the defendant respondent Carol Curl was represented by counsel while the divorce was pending. At the time of the default hearing wherein plaintiff was awarded his divorce,

---

1. Mr. Curl's statement of the issue is:

Can the Court re-open the issue of military retirement benefits when the military retirement benefits were treated as community property after the McCarty v. McCarty decision?

and Mrs. Curl's statement of the issue on appeal is:

The sole Issue on Appeal is whether the District Court was in error in ruling that the Decree should be reopened with a view toward modification in the distribution of the retirement benefits?

counsel for Carol A. Curl appeared and orally stipulated into the record the property settlement which the parties had agreed to, which agreement is reflected in the stipulated decree of divorce as follows:

[T]he Court did proceed to hear stipulations between the parties hereto and counsel and evidence submitted.

. . . .

The parties hereto stipulated and agreed that *the community property of the parties be divided* as follows:

To the Plaintiff [James L. Curl]:

1966 Chevrolet Pickup

Miscellaneous personal items and effects

*Military Retirement Benefits of Plaintiff,* if any

Home located at 340 Morris Drive, Mountain Home, Idaho

To the Defendant [Carol A. Curl]:

1980 Dodge Aspen Automobile

Furniture in the possession of the defendant

Miscellaneous personal items and effects of the defendant and minor children.

(Emphasis added).

Upon hearing the evidence and the stipulations of counsel, the court granted the parties a divorce and, pursuant to the stipulation, divided the property as follows:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED That the *plaintiff shall receive as his sole and separate property,* the following described items, to-wit:

1966 Chevrolet Pickup

Home located at 340 Morris Drive, Mountain Home, Elmore County, Idaho

Miscellaneous personal items and effects

*Military Retirement Benefits of Plaintiff,* if any

IT IS FURTHER ORDERED, ADJUDGED AND DECREED That the defendant shall receive as her sole and separate property, the following described items, to-wit:

1980 Dodge Aspen Automobile

Furniture now in defendant's possession

Miscellaneous personal items and effects of the defendant and minor children.

(Emphasis added). Plaintiff appellant was also ordered to pay child support.

On September 6, 1984, nearly three years later, respondent became dissatisfied with her original stipulation and property settlement agreement and filed a motion to modify the divorce decree in order to award her a portion of appellant's military retirement benefits. Respondent's motion was "filed under Rule 60(b)(5) I.R.C.P. on the grounds that the prior Judgment upon which the previous Decree is based has been reversed or otherwise vacated and on the further grounds that it is no longer equitable that the Judgment should have prospective application."

On November 5, 1984, the magistrate ruled that the divorce decree could not be reopened under I.R.C.P. 60(b)(5). The magistrate stated that he was not persuaded, either by the stipulation or the decree of divorce, that the property distribution was based on the ruling in *McCarty;* therefore no prior judgment upon which the previous decree was based had been reversed. I.R.C.P. 60(b)(5). Respondent appealed the magistrate's decision to the district court on December 7, 1984. When the district court affirmed the magistrate's decision, respondent filed a motion for reconsideration. Finally, on January 21, 1986, the district court issued a revised decision allowing the original decree to be reopened and modified and remanded the case to the magistrate for further proceedings regarding division of appellant's military retirement benefits. Appellant has appealed the district court's order allowing the original decree to be reopened. We reverse.

II

Respondent based her motion to modify the divorce decree on I.R.C.P. 60(b)(5), relying expressly on the following language:

**Rule 60(b). Mistakes, inadvertence, excusable neglect, newly discovered evidence, fraud, grounds for relief from judgment on order.—**On motion and upon such terms as are just, the court may relieve a party or his legal repre-

sentative from a final judgment, order, or proceeding for the following reasons: ... (5) ... a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application....

"A party seeking relief from a final judgment under the provisions of I.R.C.P. 60(b) must bring a motion therefor within the applicable time period and assert facts which bring the case within the purview of the rule." *Catledge v. Transport Tire Co., Inc.*, 107 Idaho 602, 606, 691 P.2d 1217, 1221 (1984). "[T]o be entitled to relief under I.R.C.P. 60(b), the moving party must allege grounds and plead facts bringing it within the terms of the rule." *Puphal v. Puphal*, 105 Idaho 302, 306, 669 P.2d 191, 195 (1983). Here, however, respondent has not "allege[d] grounds and plead facts bringing [her case] within the terms of the rule." *Id.*

### A.

■ Defendant respondent first relies on that portion of I.R.C.P. 60(b)(5) which permits relief from a judgment when a "prior judgment upon which it is based has been reversed or otherwise vacated." She alleged in her affidavit in support of motion for modification of decree that:

[The original divorce] Decree and the underlying Stipulation were based upon the ruling of the Supreme Court of the United States of America in the case of *McCarty vs. McCarty*, entered June 26, 1981. On September 8, 1982, the Congress of the United States enacted the Uniformed Services Former Spouses Protection Act, which became effective on February 1, 1983. This Congressional Act repealed the effect of *McCarty vs. McCarty* and rendered it ineffectual from the date of its ruling.

Thus, respondent argues that the "prior judgment" referenced in I.R.C.P. 60(b)(5) is the *McCarty* case in her situation and that it has been reversed by the act of Con-

gress, and therefore she is entitled to relief from the original divorce decree under I.R.C.P. 60(b)(5). However, that argument misconstrues the "prior judgment" language of I.R.C.P. 60(b)(5). As succinctly stated by Professors Wright and Miller in their treatise on the Federal Rules of Civil Procedure (after which the Idaho rules were patterned):

This ground [that a prior judgment upon which the present judgment is based has been reversed or otherwise vacated] is limited to cases in which the present judgment is based on the prior judgment in the sense of res judicata or collateral estoppel. *It does not apply merely because a case relied on as precedent by the court in rendering the present judgment has since been reversed.*

11 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2863 (1973) (emphasis added). *Accord Marshall v. Bd. of Education, Bergenfield, N.J.*, 575 F.2d 417, 424 (3d Cir.1978) ("Reliance on a judgment in an unrelated case, however, does not make the original judgment vulnerable within the 'prior judgment' clause of subsection 5 [of F.R.C.P. 60(b) ]."); *Wallace Clark & Co., Inc. v. Acheson Industries, Inc.*, 394 F.Supp. 393, 395 (S.D.N.Y.1975), *aff'd*, 532 F.2d 846 (2d Cir.1976), *cert. denied*, 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 *reh'g denied*, 427 U.S. 908, 96 S.Ct. 3194, 49 L.Ed.2d 1200 (1976) ("Rule 60(b)(5) does not apply where a case relied on as precedent by the court in rendering the present judgment has since been reversed.").

Thus, the first prong of I.R.C.P. 60(b)(5) relied on by respondent, *i.e.*, the "prior judgment upon which it is based has been reversed or otherwise vacated" prong, is inapplicable. There was no prior judgment "in the sense of res judicata or collateral estoppel," upon which the final divorce decree of November 10, 1981, was based. Rather, as respondent recognizes, the only "prior judgment" applicable to the final divorce decree was *McCarty*, and *McCarty* was arguably only used for its precedential value.[2] Accordingly, respondent's motion

**2.** The magistrate, in fact, found that *McCarty* was not relied on for its precedential value. In

his November 5, 1984, ruling on respondent's motion to modify the decree, the magistrate

fails under the "prior judgment reversed" language of I.R.C.P. 60(b)(5).[3]

Our prior Idaho cases are in accord. In *Merrick v. Pearce,* 97 Idaho 250, 542 P.2d 1169 (1975), relief was granted under I.R.C.P. 60(b)(5) because the prior judgment, relied on in the secondary case, had been modified. In *Merrick,* during the principal case the jury returned special verdicts of $5,422.99 for the plaintiff Merrick in his claim against the defendants, and for $7,994.67 for the defendants upon their counterclaim against the plaintiff. The trial judge, however, entered judgment for the defendants against the plaintiff in the amount of $8,441.35 (presumably the $7,994.67 + costs) rather than in the amount of $2,571.68, the difference between the special verdicts. Ten months later Mr. Merrick moved to amend the judgment so that it would be in the amount of $2,571.68. The trial court granted the motion and entered an amended judgment nunc pro tunc upon the verdicts for $2,571.68.

The secondary case in *Merrick* was initiated when the plaintiff appellants, Pearce and Flying V, sued the defendant respondent, Western Surety, the company which provided a bond for Mr. Merrick in the principal case. Judgment was entered against Western Surety based upon the $8,441.35 unsatisfied judgment the plaintiff appellants had obtained against Mr. Merrick. Later, when Mr. Merrick moved the court for an amended judgment nunc pro tunc, Western Surety did also. The trial court reduced the judgment against Western Surety to reflect the reduction in the judgment against Mr. Merrick. Pearce and Flying V appealed. This Court affirmed,

stating that "the trial court was acting pursuant to its authority under I.R.C.P. 60(b)(5) because the prior judgment upon which [Pearce and Flying V's judgment] was based had been modified." 97 Idaho at 251, 542 P.2d at 1170. In *Merrick,* the judgment in the secondary case was "based on the prior judgment in the sense of res judicata or collateral estoppel," not merely as a precedent and therefore I.R.C.P. 60(b)(5) was applicable. Conversely, nothing in the *McCarty* case had any res judicata or collateral estoppel effect on this case. There is no factual relationship between the two cases. At most, *McCarty* was precedent which the respondent wife and the original divorce court arguably relied on, even though the magistrate found otherwise at the hearing on respondent's motion for modification of the decree. But I.R.C.P. 60(b)(5) does not authorize the setting aside of a valid judgment "merely because a case relied on as precedent by the court in rendering the present judgment has since been reversed." 11 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2863 (1973).

### B.

■ The second portion of I.R.C.P. 60(b)(5) relied on by respondent in her motion to modify the divorce decree is likewise inapplicable. Respondent has not shown legally why it is "no longer *equitable* that the judgment should have *prospective* application." *Id.* (emphasis added). Nor can she, because there was nothing *prospective* about the division of appellant's military retirement benefits in the stipulation of property settlement or the divorce

expressly stated that he was not persuaded that the property distribution was based on the ruling of *McCarty.* Thus, even if use of a case as precedent met the strictures of the "prior judgment" prong of I.R.C.P. 60(b)(5) (which it does not), respondent's reliance on *McCarty* in her motion and affidavit would not be enough to entitle her to relief.

3. I.R.C.P. 60(b)(5) is probably inapplicable to the facts of this case for another reason. The decision of the United States Supreme Court in *McCarty v. McCarty* has never been "reversed or otherwise vacated" within the meaning of Rule 60(b)(5). The United States Supreme Court in

*McCarty* interpreted the then-existing statutes of the United States Congress to preempt state courts from assuming any jurisdiction over the military retirement pay of United States servicemen. By enacting the USFSPA, 10 U.S.C.A. 1408, the Congress changed the substantive law, retroactively, expressly granting jurisdiction over military retirement pay to the state courts. While Congress did change the law, retroactively, effectively nullifying *McCarty's* precedential impact, that action by the Congress did not "reverse[ ] or otherwise vacate[ ]" the judgment in the *McCarty* case.

decree. Rather, the decree simply awarded appellant, "as his sole and separate property," a number of items of property, including the "military retirement benefits of plaintiff, if any." The award of the military retirement benefits and the other property which appellant received, as well as the property which the respondent received, was effective immediately. Each received as their sole and separate property the assets which their respective legal counsel stipulated to in open court. In order "[t]o rely on Rule 60(b)(5), a movant must show two things: (1) that the judgment is *prospective* in nature; and (2) that it is no longer *equitable* to enforce the judgment as written." *Rudd v. Rudd,* 105 Idaho 112, 118, 666 P.2d 639, 645 (1983) (emphasis added). Our decision, just a little over one year ago, in *McBride v. McBride,* 112 Idaho 959, 739 P.2d 258 (1987), is directly on point on this issue. The *McBride* case also involved reopening a decree of divorce in order to modify an award of military retirement benefits. In *McBride,* we stated:

> Here, the judgment [of divorce] was not *prospective.* It adjudicated all the rights as between the parties as of the date of the judgment. Each party was awarded various portions of the property and there is no showing but that each party has gone into and remained in possession of those elements of property. ....
>
> Further, we hold that Yockey has made no showing that it is no longer *equitable* to enforce the judgment, and therefore it should be modified. The record before us indicates only that the parties entered into a voluntary settlement relating to the property division. As noted, the recitation of the property to be divided included the military retirement benefits. No value was placed upon the military retirement benefits, nor on any of the other property items. [Footnote omitted.] Yockey secured legal counsel and had the advice of that counsel.

112 Idaho at 962, 739 P.2d at 261 (emphasis added). As in *McBride,* the stipulation and divorce decree in the instant case adjudicated all the rights as between the parties as of the date of the judgment. Each party

was awarded various portions of the property and there is no showing in this record other than that each party has gone into and remained in possession of the respective items of property awarded to them. Accordingly, the judgment is not prospective. Further, again as in *McBride,* the parties in the instant action entered into a voluntary settlement relating to the property division, the recitation of the property to be divided included the military retirement benefits, no value was placed on the retirement benefits or any of the other property to be divided, both parties had the advice of legal counsel, both parties requested the court to divide the property in accordance with the terms of the agreement, and both parties obtained precisely what they requested from the court. Hence, there is no showing in the instant case that it is no longer equitable to enforce the judgment.

Our analysis on this issue is reinforced by cases from other jurisdictions. In *Gajewski v. Bratcher,* 240 N.W.2d 871, 891 (N.D.1976), the Supreme Court of North Dakota stated:

> [W]e believe that a judgment which quiets title to land, although certainly having an impact on future dealings with such land, is not a judgment having prospective application within the meaning of such term in Rule 60(b)(5), N.D.R.Civ. P.

Like the land in the North Dakota case, the judgment in this case (which awarded the military retirement benefits to the appellant) will allow him to have the future benefit of that and all other property awarded to him. However, that does not give the judgment of divorce prospective application within the meaning of I.R.C.P. 60(b)(5). Because the divorce decree in the instant case cannot reasonably be read to have any prospective effect, being, rather, a one-time division of property, the district court here had no jurisdiction to allow the modification of the decree under the "prospective application" prong of I.R.C.P. 60(b)(5).

Under either portion of 60(b)(5) advanced by respondent—be it that a prior judgment upon which her divorce decree was based

has been reversed or otherwise vacated, or be it that the judgment should no longer have prospective application—the motion must be denied. Under neither theory did respondent "bring the case within the purview of the rule." *Catledge v. Transport Tire Co., Inc.,* 107 Idaho 602, 606, 691 P.2d 1217, 1221 (1984). *Accord Puphal v. Puphal,* 105 Idaho 302, 669 P.2d 191 (1983). "A party seeking relief from a final judgment under the provisions of I.R.C.P. 60(b) must bring a motion therefor within the applicable time period and assert facts which bring the case within the purview of the rule." *Catledge v. Transport Tire Co., Inc.,* 107 Idaho 602, 606, 691 P.2d 1217, 1221 (1984). This respondent has failed to do.

Accordingly, the district court's revised decision on appeal, dated January 21, 1986, is reversed and the magistrate's ruling that the divorce decree could not be reopened is affirmed. Costs to appellant. No attorney fees allowed.

SHEPARD, C.J., and JOHNSON, J., concur.

HUNTLEY, Justice, dissenting.

While searching for inspiration and authority for this dissent, I journeyed last night deep into the bowels of our marble palace where I overheard and recorded the enactment of a three person drama:

THE RAPE OF THE SABINE WOMEN
(A Modern Idaho Sequele)

PROLOGUE

Oracle: What brings you before me, Justicus and Wificus?

Wificus: I seek understanding as to why I have lost my retirement benefits when for many years I have endured as a military wife, suffering through long absences from my husband, inadequate income, and difficult living conditions.

Oracle: Five concepts tell it: Res judicata, vacated, equity, Stare decisis and non-prospective application.

Justicus: But she understands not.

Oracle: Play out your cases and I will give you understanding.

ACT ONE

Res Judicata

Justicus: Your case has been decided and you cannot reopen it. Do you not honor and understand Res Judicata?

Wificus: What does it mean and who pronounced it?

Justicus: It means "things decided" and a court pronounced it, an Idaho magistrate, in your case.

Wificus: What qualities must that court have?

Justicus: It must have jurisdiction.

Wificus: Did not the U.S. Supreme Court in *McCarty* hold that Idaho courts are preempted from deciding "this thing" and are therefore lacking jurisdiction. How can a court with no jurisdiction decide something?

Oracle: Res judicata—be careful woman, you search too deeply.

Wificus: Why does the Oracle use Latin on me?

Justicus: This reasoning might appear foolish in English.

ACT TWO

Vacated

Wificus: Oh great Justicus, Rule 60(b)(5) would seem to give me relief "if a prior judgment upon which *it* is based has been reversed or otherwise vacated." You then stated that *McCarty* was mere precedent and not something that directly caused my distress.

Justicus: Yes, it was mere precedent.

Wificus: Was not the magistrate both preempted and bound?

Oracle: Guard your tongue, woman.

Wificus: But sir, did not Congress, through the USFSPA at least *vacate McCarty*?

Justicus: Not as I see it.

Wificus: I'm sorry, my Lord. I had thought that since it is no longer viable and in effect it is at least vacated, but I guess I'm wrong.

## ACT THREE

### Equity

Wificus: Rule 60(b)(5) further states:
"... or it is no longer equitable that the judgment should have prospective application...."
What does equity mean?

Oracle: Fair, just and reasonable.

Wificus: Where, in this record is it demonstrated that that which I have earned should be taken from me?

Justicus: We tell you what equity is. ·

Wificus: But does not the legislation by both Congress and the Idaho Legislature and the decisions of other courts count with you in ascertaining equity?

Justicus: They count, but not enough to overcome three of us. ·

## ACT FOUR

### Non–Prospective Application

Wificus: What does prospective mean?

Justicus: Something that didn't happen already.

Wificus: Why was my decree not prospective in application?

Justicus: Because the judgment was signed and filed at a given moment in time.

Wificus: Is that not true of all judgments —remember, that date was four years before my husband retired and four years before the first retirement payment was to be made. Also, if he had died during those four years, no payment ever would have been made. On the day of our divorce, the total amount of his monthly payments was not even established. Do not all of those factors give a tiny essence of prospectivity?

Justicus: I see nothing prospective there.

Wificus: I would reason that in its application the decree was either past, present, or future. Since the decree did not act on the past, and was not dividing monies we had on its date, does that not leave only the third alternative of the future?

Justicus: Woman, you will note we did not explain nor will we explain what we mean by prospective and non-prospective.

I refer you to the next Act. Stare decisis is my best shot.

## ACT FIVE

### Stare Decisis

Wificus: You say this prospective thing is stare decisis under *McBride*, but I see no definition or rationale therein. What does stare decisis mean and why do you use it?

Justicus: Stare decisis means the thing is decided and people like you will respect the courts more if once we decide something, we stick with it.

Wificus: You mean I should respect you more if you stay consistent although wrong?

Justicus: Of course, my dear.

Wificus: My respect grows by the minute!

## EPILOGUE

Oracle: You now have a better understanding of three Roman and two English concepts or phrases. You can trust the manly courts to give you your just deserts, my dear.

Wificus: Yes, my Lord, I feel better already. Where is the nearest soup kitchen? I'LL GET MY DESSERT LATER!

BISTLINE, Justice, dissenting.

I cannot agree with yet another majority opinion that portrays Idaho jurisprudence at what will be perceived to be at very low ebb.

Justice Bakes' truncated version of the law prior and subsequent to the enactment of the Uniform Services Former Spouses Protection Act (USFSPA) must be fleshed out so the reader may fully understand the travesty perpetrated by the majority today. Prior to 1981, Idaho courts regularly and faithfully treated military retirement benefits as community property, at least to the extent such benefits vested or accrued while the husband and wife were domiciled in a community property state. *Ramsey v. Ramsey*, 96 Idaho 672, 535 P.2d 53 (1975). In the summer of 1981, the United States Supreme Court decided *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d

589 (1981). *McCarty* held that, under federal law, military retirement benefits could not be characterized and considered as community property in property divisions upon divorce. Subsequent to *McCarty,* this Court "reluctantly" complied with the *McCarty* holding. *Rice v. Rice,* 103 Idaho 85, 645 P.2d 319 (1982).

On February 1, 1983, USFSPA, P.L. 97–252, 10 USC § 1408 (enacted September 8, 1982) took effect. The USFSPA granted trial courts the discretion to include a division of military retirement benefits in final dissolution decrees, should applicable state law so allow. The USFSPA left no doubt that it was enacted in response to *McCarty:*

> Subject to the limitations of this section, the court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 26, 1981 [the date of the *McCarty* decision], either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

10 USC § 1408(c)(1).

Moreover, the legislative history available for the USFSPA shows that the Act not only effectively voided the *McCarty* decision, but also was intended to apply retroactively to protect those spouses of uniformed servicemen whose divorces occurred during the twenty-month effective period of *McCarty.*

> The purpose of this provision is to place the courts in the same position they were in on June 26, 1981, the date of the *McCarty* decision, with respect to treatment of non-disability military retired or retainer pay. The provision is intended to remove the federal preemption found to exist by the United States Supreme Court and permit state and other courts of competent jurisdiction to apply pertinent state or other laws in determining whether military retired or retainer pay should be divisible. Nothing in this provision requires any division; it leaves that issue up to the court applying community property, equitable distribution or other principles of marital property

determination and distribution. *This power is returned to the court retroactive to June 26, 1981* [the effective date of the *McCarty* decision]. This retroactive application will at least afford individuals who were divorced (or had decrees modified) during the interim period between June 26, 1981 *and the effective date of this legislation* the opportunity *to return to the courts* to take advantage of this provision. (Emphasis added).

Senate Report No. 502, 97th Congress, 2nd Session 16, reprinted in 1982 U.S.Code Congressional and Ad.News 1596, 1611.

In short, the USFSPA was enacted solely to ameliorate the effects of *McCarty* and to return to the states the power to decide the extent to which military retirement benefits could be considered in dissolution proceedings; it specifically provides a cause of action where a decree has been entered or modified. Idaho quickly responded to the USFSPA by reinstating its *Ramsey* decision. *Griggs v. Griggs,* 107 Idaho 123, 686 P.2d 68 (1984).

Thus, Justice Bakes is flat wrong in his approach to Mrs. Curl's motion for relief from the property decree under I.R.C.P. 60(b)(5) upon the ground that "a prior judgment upon which it is based has been reversed or otherwise vacated." *McCarty* was not mere persuasive precedent from another jurisdiction. It was a binding directive upon state courts from the Supreme Court of the United States which had the power to interpret federal law governing military benefits in the absence of a positive act by Congress. That precedent was *voided* by the USFSPA as evidenced by its returning power to state courts to divide military pensions as of the effective date of *McCarty.*

Where Congress has so acted within its area of plenary power, state courts, today ours being represented by our majority of three, *may not act inconsistently.* This point was made convincingly by Justice Rehnquist in his *McCarty* opinion.

> ... *Congress may well decide,* as it has in the Civil Service and Foreign Service contexts, that more protection should be

afforded a former spouse of a retired service member. *This decision, however, is for Congress alone.* We very recently have re-emphasized that *in no area has the Court accorded Congress greater deference than in the conduct and control of military affairs.* See *Rostker v. Goldberg* [453 U.S. 57] *ante.* at 64–65, 69 L.Ed.2d 478, 101 S.Ct. 2646 [at 2651–52], [ (1981) ].

Thus, the conclusion that we reached in *Hisquierdo* [*v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) ], follows *a fortiori* here:

*Congress has weighed the matter, and 'it is not the province of state courts to strike a balance different from the one Congress has struck.'* 439 U.S. [572] at 590, 59 L.Ed.2d 1, 99 S.Ct. 802 [at 813] (1979).

*McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 2743, 69 L.Ed.2d 589 (Emphasis added).

*McBride* was a wrongly decided case the likes of which we should today not hesitate to overrule. *McBride* rigidly employed a wooden analysis of the doctrine of *res judicata* to preclude the wife's attempted reopening of a dissolution judgment, in order to consider military retirement benefits as community assets in a situation where the parties filed for, and received a final divorce decree subsequent to the enactment of the USFSPA, but before the effective date thereto. This Court ignored the substantial line of authority which recognizes the extraordinary circumstances presented by those cases where divorce decrees were finalized during the twenty-month effective period of *McCarty*. I am now convinced that these authorities are persuasive. Specifically, I look to *Flannagan v. Flannagan*, 42 Wash.App. 214, 709 P.2d 1247 (1985), wherein the court recognized the uniqueness of the situation and allowed for examination of a final decree in light of the USFSPA, despite the acknowledged importance of the doctrine of *res judicata.*

While we recognize the importance of finality of judgments, some situations justify an exception to this 'doctrine of finality.' We hold that the circumstances presented in these cases are sufficient-

ly extraordinary to permit the use of a CR 60(b)(11) [a procedural mechanism analogous to portions of I.R.C.P. Rule 60(b) and Federal Rule of Civil Procedure 60.] motion to reexamine the final decrees in light of the USFSPA.

709 P.2d at 1249.

The *Flannagan* court relied upon the well-articulated congressional intent "that the USFSPA apply retroactively to eliminate all effects of the *McCarty* decision...." 709 P.2d at 1250, quoting from *In re Marriage of Konzen*, 103 Wash.2d 470, 693 P.2d 97, *cert. den.*, 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985) (emphasis added). Additionally, the court relied heavily upon the "extraordinary circumstances" present where divorce decrees were finalized during the twenty-month effective period of *McCarty*.

We agree that the *McCarty* period cases present 'extraordinary circumstances.' Those circumstances are as follows; First, the clear Congressional desire of removing all ill effects of *McCarty;* second, the alacrity with which the Congress moved in passing the USFSPA; third, the anomaly of allowing division of military retirement pay before *McCarty* and after USFSPA, but not during the twenty-month period in between; and fourth, the limited number of decrees that were final and not appealed during that period.

709 P.2d at 1252.

Finally, the Court emphasized that, in light of the extraordinary circumstances there detailed, "[a]llowing reopening of these cases will not provide a springboard for attacks on other final judgments." 709 P.2d at 1252. In short, *Flannagan* correctly notes the limited nature and effect of allowing reopening in those cases were divorce decrees were finalized in the twenty-month effective period of *McCarty*. This situation is unique, and the dearth of possible claimants seeking reopening on these grounds in Idaho should readily compel all of us to conclude that providing for reopening in this limited situation will not lead to disrespect for the doctrine of finali-

ty of judgments, nor the haphazard dismemberment thereof.

Further, and importantly, most states which have both a procedural mechanism for the reopening of final judgments and have considered the retroactive application of the USFSPA to final decrees have allowed reopening. *Thorpe v. Thorpe*, 123 Wis.2d 424, 367 N.W.2d 233 (1985); *Koppenhaver v. Koppenhaver*, 101 N.M. 105, 678 P.2d 1180 (App.1984); *Castiglioni v. Castiglioni*, 192 N.J.Super. 594, 471 A.2d 809 (1984); *Edsall v. Superior Court*, 143 Ariz. 240, 693 P.2d 895 (1984). In Idaho, we also have, under I.R.C.P. 60(b)(5), such a procedural mechanism allowing for reopening of judgments.

For a time the courts of this state also were under legislative authorization to reopen property settlements, legislation which is totally ignored by the majority today and in *McBride* when that case was reheard:

CHAPTER 68

(S.B. No. 1076)

AN ACT

RELATING TO ACTIONS FOR DIVORCE; AMENDING CHAPTER 7, TITLE 32, IDAHO CODE, BY THE ADDITION OF A NEW SECTION 32–713A, IDAHO CODE, TO ALLOW MODIFICATION OF COMMUNITY PROPERTY SETTLEMENTS, JUDGMENTS, OR DECREES WHICH BECAME FINAL IN THE PERIOD OF JUNE 25, 1981, TO FEBRUARY 1, 1983, BY ALLOWING THE INCLUSION OF MILITARY RETIREMENT BENEFITS IN THE SETTLEMENT, JUDGMENT, OR DECREE, TO PROVIDE A STATUTE OF LIMITATIONS, AND TO PROVIDE A SUNSET CLAUSE.

Be It Enacted by the Legislature of the State of Idaho:

SECTION 1. That Chapter 7, Title 32, Idaho Code, be, and the same is hereby amended by the addition thereto of a *NEW SECTION*, to be known and designated as Section 32–713A, Idaho Code, and to read as follows:

32–713A. MODIFICATION OF DIVORCE DECREE—EFFECTIVE DATE.

1. Community property settlements, judgments, or decrees that became final on or after June 25, 1981, and before February 1, 1983, may be modified to include a division of military retirement benefits payable on or after February 1, 1983, in a manner consistent with federal law and the law of this state as it existed before June 26, 1981, and as it has existed since February 1, 1983.

2. Modification of community property settlements, judgments, or decrees under this section may be granted whether or not the property settlement, judgment, or decree expressly reserved the pension issue for further determination, omitted any reference to a military pension, or assumed in any manner, implicitly or otherwise, that a pension, divisible as community property before June 25, 1981, and on or after February 1, 1983, was not, as of the date the property settlement, judgment, or decree became final, divisible community property.

3. Any proceeding brought pursuant to this section shall be brought before July 1, 1988.

4. This section shall remain in effect until July 1, 1988, and on that date it is repealed and null and void.

Approved March 24, 1987.

1987 Idaho Gen.Laws, Ch. 68, 122–23.

Of particular note is the date the act was approved—March 24, 1987—a little over two months after *McBride* was filed on January 7, 1987. It is not too great a leap of imagination to surmise that the act was passed in response to, and to correct, the *McBride* travesty. Indeed, much as with *McCarty* vis-a-vis the USFSPA, the act may be read as overruling *McBride* legislatively. Yet today's majority chooses to accord *McBride* the reverence which is ordinarily reserved for the judicial doctrine of *stare decisis*. (A notable exception is the aberration, *Duthie v. Lewiston Gun Club*, 104 Idaho 751, 663 P.2d 287 (1983).) In Idaho that doctrine may henceforth be escalated to mean that all prior cases will be upheld and applied no matter how ill-princi-

pled or wrongly decided. It will make work at this level speedier, but it will poorly serve the trial bench and bar and the people of Idaho.

Justice Bakes is also flat wrong in his misapplication of the second ground for relief under I.R.C.P. 60(b)(5), that it is "no longer equitable that the judgment should have prospective application."

In Idaho the equity, or better put, the inequity of the situation was seen and decreed by our legislature[4] in its statement of purpose guiding the enactment of I.C. § 32–713A, quoted above.

### STATEMENT OF PURPOSE

*Background:* A U.S. Supreme Court decision handed down on June 26, 1981, precluded military retirement pensions from consideration as community property in divorce cases.

The court in its decision urged Congress to correct the situation which it did by enacting the Federal Uniformed Services Former Spouses Act (U.S.Code 1408) providing that military retirement pensions can indeed be considered as community property. The bill was enacted on February 1, 1983.

In Idaho, this left a gap of two years during which courts were unable to treat military retirement pensions as community property.

*Purpose: The bill would correct that inequity and provide a procedural mechanism to permit courts to reopen the few military divorce cases that fell into that 2 year gap.*

Cited in *McBride*, 112 Idaho at 972, 739 P.2d at 271 (Bistline, J. dissenting on rehearing) (emphasis added). This statement of purpose, like the act itself, is wholly ignored by today's majority as it was by the majority in *McBride*. It is thus that our Idaho jurisprudence is brought into disrepair and disrepute.

Justice Bakes likewise errs in his application of the word "prospective" in the rule.

As sole support, he cites the discredited and disreputable *McBride* decision. Surely a property decree that awards the husband as his sole property his military retirement benefits, *if any,* is prospective in its *application.* The benefits are yet to be received.

As used in Rule 60(b)(5) a "prospective judgment" is used in contrast "with those that offer a present remedy for a past wrong," such as a judgment for money damages. 11 Wright and Miller, § 2863, p. 205 (1973 ed.). Judgments prospective in their application do not require unscrambling of the past and do not involve the rights of third parties. *Id.* at 202. Equitable decrees, such as injunctions and property divisions, which require the parties to do, or refrain from doing some act, and which potentially require *future court oversight,* are prospective judgments *par excellence.*

But according to Justice Bakes, all judgments that have some effect, however slight, on the day of entry, are not prospective. This interpretation would dictate that no judgments would be prospective and eliminate that ground for relief under I.R.C.P. 60(b)(5). If a decree that awards retirement benefits *which are not yet payable, and which will be paid on a monthly basis in the future,* is not prospective in its application I am hard pressed to say what is prospective.

Looking beyond Justice Bakes' niggling application of the rules is the larger fault that this Court has thus abdicated its inherent power to act to correct an inequity pointed out to us by I.C. § 32–713A and its Statement of Purpose quoted above. I have made this point on a prior occasion:

What surfaces all too clearly in the majority disposition of this case, and its refusal to even mention the Idaho legislation, is the overriding obsession of one member of the Court, unfortunately joined by two others, that unless *the inequity* can be cured by one of the

---

**4.** "[O]n an adequate showing the courts will provide relief if it is no longer equitable that the judgment be enforced, *whether because of subse-* *quent legislation,* a change in the decisional law, or a change in the operative facts." 11 Wright and Miller, § 2863, pp. 209–10 (1973 ed.)

court's plethora of rules, it cannot be done at all.

A principle entirely forgotten by those who are today's majority, is that rules sometimes emanate from appellate decisions. The 1882 rules promulgated by the Territorial Supreme Court specifically stated that *rules of practice established in the decisions of the court shall remain in force as heretofore,* and were in addition to those made administratively—which were few, thirty-one in all.

Today, we have a court which has so fettered itself with rules made administratively, that it has well-nigh emasculated itself. One recent exception comes to mind. In *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979), the Court by *decision,* and not by rule, held 'that the statutory power to award attorney's fees applies to the members of this Court as well as to the district judges throughout the state.' Today, in stark contrast, the Court has the statutory power to correct an inequity, but turns it away ostensibly because the statutory power does not fit into any particular pigeonhole of the various court-made rules affording relief from judgments.

Today's inaction by the majority presents a sad commentary on the intellect and capabilities of this Court to function as earlier courts have functioned. Finding itself with a 613 page bound volume of rules plus a 1986 pocket parts of 357 more pages of rules, but without a specific rule thought applicable to applying a legislative remedy, this Supreme Court will be unique in deeming itself no longer able to act by deciding a case which will itself provide a case-law rule—all notwithstanding a legislative enactment which is all the authority needed. *McBride v. McBride,* 112 Idaho at 972–73, 739 P.2d at 271–72 (Bistline, J. dissenting on rehearing).

Thus, today's majority of three refrains from acting where this Court clearly has always heretofore been aware of its inherent power to do so. The three also refuse to obey a directive of the Congressional plenary power over federal retirement benefits. Finally, the three choose to ignore an act of our own Idaho legislature which authorized reopening property settlements like the Curls'. That today's three very likely cast themselves as careful and conservative believers of judicial restraint presents an irony that would be amusing were not the consequences so serious—for Mrs. Curl in this case, and also for the lamentable debilitation of our Idaho jurisprudence.